## LAURO v. UNITED STATES.
### No. 266, Docket 20976.

Circuit Court of Appeals, Second Circuit.

June 4, 1948.

[5] See also Glenn v. American Surety Co., supra. Moore Ice Cream Co. v. Rose, 289 U.S. 373, 382, 53 S.Ct. 620, 77 L.Ed. 1265.

Jacob Rassner, of New York City (Jack Steinman, of New York City, on the brief), for appellant.

Raymond Parmer, of New York City, and J. Vincent Keogh, of Brooklyn, N. Y. (Kirlin, Campbell, Hickox & Keating and Charles N. Fiddler, all of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The libellant appeals from a decree in the admiralty upon a libel against the United States, filed under the Public Vessels Act,[1] which awarded damages for the death of her husband, a stevedore, while at work upon a public vessel of the United States. The award was $25,000, to which the decree now before us added interest at four per cent from October 5, 1945, the date of an earlier decree. Upon the libellant's appeal she claims interest at six per cent from the date of her husband's death, May 27, 1943. On September 22, 1947, we decided this precise point upon a motion for an "interpretation" of our mandate.[2] and the appeal is no more than an effort to persuade us to reconsider that decision. The term has now expired since our mandate went down and since we handed down its "interpretation," and we should have no longer any power to change our decision[3] even if we were disposed to do so, which we are not.

The respondent filed assignments of error which raise a question of more difficulty, and require some statement of the past litigation. We reversed the original decree of October 5, 1945, on May 22, 1947,[4] because the libellant had failed to prove either that she was an American citizen, or that Italian law conferred similar rights upon American citizens. When the case came on again before the district court, the respondent admitted that the libellant was an American citizen, and a decree was entered on July 22, 1947, which allowed interest at six per cent from the date of death. As we have just said, on September 22, 1947[2] we "interpreted" the mandate entered upon our decision of May 27, 1947,[5] and in accordance with that "interpretation" the judge on January 19, 1948, amended his decree of July 22, 1947, by cutting down interest from six to four per cent, and making it run from October 5, 1945, the date of his first decree. The respondent insists that, since our mandate reversed that decree, and since § 2 of the Public Vessels Act[6] forbids interest up to the time of the rendition of "judgment," no interest earlier than July 22, 1947, is in any event permissible. The libellant answers that the decree of October 5, 1945, was not, properly speaking, reversed, but should rather be regarded as suspended until she should supply the missing fact—her citizenship—and that, when the respondent conceded that she was a citizen, the suspension came to an end and the decree was, so to say, released to go into effect. It is indeed always possible, when a command—be it a statute, judgment or regulation—is subject to a condition, to think of it as in a sort of suspended animation until the condition is satisfied, and as having existed dormant from the start. Plainly that is a fiction; but be it as it may, our mandate did not suspend the decree of October 5, 1945; it put an end to it by reversing it in so many words. We could not have done otherwise, for, as the record stood, the libellant was not entitled to any relief; and, so far as then appeared, she might never become entitled to any. Therefore, the earliest decree which can have survived is that of July 22, 1947; and the respondent is to that extent undoubtedly right.

It goes on to argue that even that decree cannot mark the beginning of the period of interest; and as to that we do not agree. Certainly the decree did "order" interest to "run," and, formally at any rate, it satisfied § 3 of the Suits in Admiralty Act.[7] The

[1] Chapter 22, Title 46 U.S.C.A.
[2] 2 Cir., 163 F.2d 642.
[3] Briggs v. Pennsylvania R. R. Co., 334 U.S. —, 68 S.Ct. 1039.
[4] 2 Cir., 162 F.2d 32.
[5] 2 Cir., 162 F.2d 32.
[6] § 782, Title 46 U.S.C.A.
[7] § 743, Title 46 U.S.C.A.

argument, however, is that, when an appeal is taken in the admiralty, the appellate court must itself award interest if there is to be any;[8] and that we did not award any interest in our decision of September 22, 1947,[9] and cannot now do so, the term having passed. Therefore, the earliest possible "judgment" from which interest can run is the decree of January 19, 1948. This presupposes that the motion to "interpret" our mandate of May, 1947, had the effect of an appeal, and as such vacated the decree of July 22, 1947.[10] If this were true, it might be difficult under the practice in the admiralty, which § 3 of the Suits in Admiralty Act[7] made applicable to all suits brought under it, to date the running of interest from July 22, 1947: the same reasoning would apply which we have used as to the decree of October 5, 1945. However, there was no appeal from the decree of July 22, 1947; the motion did include a prayer that we should recall our mandate; and that would have revested us with jurisdiction, which, we will assume arguendo, would have vacated the decree. But we expressly refused to recall our mandate: and, although the difference may be only one of form, our "interpretation" did not revest us with jurisdiction as an appeal would have done, even though the result was to require the decree to be amended.

■ When the judge took the action required by the "interpretation," as he did by the decree of January 19, 1948, he did not add any interest to that "ordered" by the decree of July 22, 1947; on the contrary he not only cut down the rate from four to six per cent, but he shortened the period by making it begin on October 5, 1945, instead of at the date of death. The error which still remained in the decree of July 22, 1947, even after this amendment: i.e. making interest "run" from October 5, 1945, we may now in our own turn correct without vacating the decree of July 22, 1947, because its effect also is to cut out some of the interest "ordered" by that de-

cree. The result will be that interest may begin to run on July 22, 1947, in conformity with both § 3 of the Suits in Admiralty Act,[11] and § 2 of the Public Vessels Act.[12]

■ It would follow that the libellant is entitled to four per cent from July 22, 1947, till the date of payment; and that would be true, had she not appealed from the decree of January 19, 1948, as she did on January 30, 1948. However, by another peculiarity of admiralty practice, if a party takes an appeal from an award in his favor and is unsuccessful, he is not allowed interest pending the appeal upon what he got under the decree of the district court.[13] The reason given has always been that by his appeal he has made it impossible for the appellee to discharge the debt; and this is a corollary of the doctrine already mentioned, that an appeal vacates the decree. The rule is well settled, and, so far as we have found, it is without exception, for we do not so regard the decision of the Ninth Circuit in The President Madison.[14] In that case the claimant of the "President Madison" appealed from a decree holding her liable; and so did the owners of the ship and of the cargo which the "Madison" had sunk, who appealed only because they had not been allowed interest from the date of the loss to the final decree. In this they were successful, for, although the court affirmed the decree against the "Madison," it allowed interest to the owners of the sunken vessel and her cargo from the time of the loss. Obviously, it would have been unfair to deny them interest pending an appeal which they had won; indeed, the doctrine has never been applied except against a losing appellant.

The decree will be modified by allowing interest at four per cent from July 22, 1947; except that no interest will run between January 30, 1948, and the date of the order of the district court entered on the mandate on this appeal. Mandate to go down forthwith.

---

7 § 743, Title 46 US.C.A.

8 Hemmenway v. Fisher, 20 How. 255, 15 L.Ed. 799.

9 2 Cir., 163 F.2d 642.

10 The John Twohy, 255 U.S. 77, 41 S.Ct. 251, 65 L.Ed. 511; Brooklyn Eastern Terminal v. United States, 287 U.S. 170, 177, 53 S.Ct. 103, 77 L.Ed. 240.

11 § 743, Title 46 U.S.C.A.

12 § 782, Title 46 U.S.C.A.

13 The Rebecca Clyde, C.C., Fed.Cas. No. 11,622, 12 Blatchf. 403; The C. P. Raymond, C.C., 36 F. 336; The Express, 2 Cir., 59 F. 476; The S. V. Luckenbach, 2 Cir., 197 F. 893.