Complaint of SINCERE NAVIGATION CORPORATION, as owner of the S/S HELENA, for Exoneration from or Limitation of Liability and Consolidated Cases.

Civ. A. No. 68–2250.

United States District Court,
E. D. Louisiana.

Feb. 23, 1978.

George A. Frilot, III, New Orleans, La., J. B. Jones, Jr., Cameron, La., Joe L. Horne, New Orleans, La., A. J. McNamara, Metairie, La., Milton E. Brener, Raymond A. McGuire, Charles M. Steen, New Orleans, La., for plaintiffs in death and injury cases.

Clarence A. Frost, Joseph M. Brush, Patrick Burke, New Orleans, La., for petitioner for exoneration.

Allen van Emmerik, Washington, D. C., John R. Schupp, Asst. U. S. Atty., Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., for United States.

ALVIN B. RUBIN, Circuit Judge.[*]

The final clean-up task remaining to complete this case is to determine the relative burden of costs and interest between the United States and the Sincere Navigation Company. The parties have agreed on all matters save those discussed in this opinion.

## I. Interest

Judgment has been rendered against Sincere for claims for personal injury and property damage, together with interest. Judgment has been rendered on Sincere's cross-claim against the United States, as owner of the White Alder, for a portion of the amount that Sincere, as owner of the Helena, has paid the claimants. Judgment has been rendered in favor of the United States for a portion of its own damages. While a judgment was originally entered on February 22, 1972, and amended on April 12, 1972, the final judgment was different in terms, and it was not rendered at one moment. The 1972 judgment was based on the thesis that the plaintiffs were entitled to certain amounts, the vessels were mutually at fault in the disaster, and, in accordance with the divided damages rule then prevailing, the damages were to be borne in equal proportions by Sincere and the United States.

Thereafter, that judgment was appealed by both Sincere and the United States. The Court of Appeals remanded for a recomputation of the damages due the plaintiffs, retaining jurisdiction of the case. While the appeal was pending, the Supreme Court had decided *United States v. Reliable Transfer Company, Inc.*, 1975, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251, and had adopted a ruling requiring allocation of damages proportioned to fault; therefore, the Court of Appeals also ordered a determination of the relative fault of the vessels. *Matter of S/S Helena,* 5 Cir. 1976, 529 F.2d 744.

On September 8, 1976, this court rendered an opinion holding the Helena 35% at fault and the White Alder 65% at fault. That opinion was incorporated by this court into a proposed form of judgment on December 17, 1976. However, the terms of the remand did not authorize the trial court to

[*] Sitting as district judge by special designation of Chief Judge John R. Brown.

enter judgment. Hence, an enforceable judgment was entered only on July 1, 1977, after the Court of Appeals directed entry of a final judgment "in the proposed form submitted by the district court . . . ."

Sincere has satisfied the judgment in favor of the plaintiffs, together with interest from the date of injury to the date of judgment and interest from the date of judgment until payment. It seeks to collect from the United States 65% of the total amount it has paid. The United States admits that it is liable for that proportion of the principal paid, but contends it has no liability for any part of the interest that accrued prior to the entry of judgment against it because recovery against it can be effected only by invoking the Public Vessels Act, 46 U.S.C. § 781, et seq., and that Act prevents the recovery of pre-judgment interest from the United States. 46 U.S.C. § 782.

The White Alder, a Coast Guard buoy tender, was, of course, a public vessel; hence, the Public Vessels Act applies in determining the matters for which the United States may be held liable. The statute provides, in relevant part, "[N]o interest shall be allowed on any claim up to the time of the rendition of judgment unless upon a contract expressly stipulating for the payment of interest." 46 U.S.C. § 782.

■ The statute refers only to "the time of the rendition of judgment." This reference must mean the final judgment. Here, for example, the first trial court judgment was entered in February, 1972. It was based on different legal theories, as well as different amounts of principal and different percentages of fault from the final judgment entered five years later. There is no accurate way to strike a balance on the basis of the earlier judgment, although interest from the date of its entry may now be computed retroactively. Whatever may

be the situation when the trial court is affirmed, it appears to be impractical and undesirable to fix the date of rendition of judgment by reference to a judgment that does not determine the final liabilities of the parties.

This appears to be the significance of the decision in *Canadian Aviator, Ltd. v. United States,* 2 Cir. 1951, 187 F.2d 100, *cert. denied,* 342 U.S. 813, 72 S.Ct. 27, 96 L.Ed. 615. There the court held that post-judgment interest did not commence upon a finding of liability in an interlocutory decree but should commence only on "the entry of the final decree striking a balance in favor of the party that sustained the greater damages." 187 F.2d at 101.

The result was similar in *Lauro v. United States,* 2 Cir. 1948, 168 F.2d 714, where there were a series of decrees. The trial court entered a decision on October 5, 1945, in favor of the libellant. It was reversed by the Court of Appeals on May 22, 1947. The trial court entered a new decree in favor of the appellant on July 22, 1947, allowing interest against the United States but at the erroneous rate of 6%. On September 22, 1947, the Court of Appeals "interpreted" its mandate of May 22, 1947, and, in accordance with that "interpretation," the trial judge amended the July 22, 1947 decree on January 19, 1948, reducing the rate of interest to 4%. The trial judge set the date for starting interest as October 5, 1945, the date of its first decision. The Court of Appeals, however, held that interest ran only from July 22, 1947, the date of the effective final decree on the merits.[1] Although this decree was subsequently amended with respect to the interest due, it represented the effective final decree striking the balance of damages due.

A like issue was discussed in *Mascuilli v. United States,* E.D.Pa.1974, 383 F.Supp. 50, 53, where Judge Ditter posed the query:

---

1. However, no interest was allowed from January 30, 1948, the date of appeal from the January 19, 1948, order, until the district court entered the order mandated as a result of the appeal, 168 F.2d 714. This hiatus resulted from "another peculiarity of admiralty practice, if a party takes an appeal from an award in his

favor and is unsuccessful, he is not allowed interest pending the appeal upon what he got under the decree of the district court." 168 F.2d at 716. *But see, Kotsopoulous v. Asturia Shipping Co.,* 2 Cir. 1972, 467 F.2d 91, where the court rejected this doctrine.

Section 782's mandate that interest can only run after the rendition of judgment is ambiguous. Does it mean any judgment, a final judgment, or a final judgment not vacated or reversed? While I could find no direct answer to this question, the correct interpretation may be reached by the process of elimination.

He concluded that interest against the United States began on the day "the final judgment on liability was rendered," although this decree was modified twice because of errors in computing damages.[2] *Ibid.* In the present case we need not consider the effect of modifications to a judgment casting the parties for the final determination of fault; the only judgment that qualified under Section 782 was entered on July 1, 1977.[3]

Other trial courts have similarly used the term "final decree" to denote the date contemplated by Section 782. *See Willis v. United States*, E.D.Va.1961, 202 F.Supp. 67; *Geo. W. Rogers Const. Corp. v. United States*, S.D.N.Y.1954, 118 F.Supp. 927, 936. *See also, Coyle Lines v. United States*, 5 Cir. 1952, 198 F.2d 887, 888, where this court recognized that the Public Vessel Act prohibits interest prior to the rendition of judgment and in its discretion so limited the interest award in a Suit in Admiralty Act, 46 U.S.C.A. §§ 743, 745, case.

The judgment against the United States is for 65% of the sums paid by Sincere. This entitles Sincere to recoup 65% of whatever it has paid out to the claimants for amounts due prior to July 1, 1977, whether denominated interest or principal. As to Sincere, this is not pre-judgment interest. It is the recovery of principal. Had the claimants sued the United States directly, (assuming that they would have had a right to do so), they could not have collected pre-judgment interest. But they sued Sincere and recovered from them principal, interest and costs.

 Once the judgment became final, on July 1, 1977, a balance could be struck. There was a judgment against the United States. It appears that the statute fixes the rate of interest from that time forward. The judgment against the United States is for 65% of the damages sustained by Sincere Navigation Corporation; those damages include interest to July 1, 1977, at the rate paid claimants. It accrues interest from that date at 4% only, the statutory rate. *Canadian Aviator, Ltd., supra*, 187 F.2d at 101; *Mascuilli, supra*, 383 F.Supp. at 53. When the United States reimburses Sincere for 65% of its total outlay, it does not pay principal or interest as such: it repays Sincere for a portion of the damages Sincere sustained. Sincere's claim is for the "detention of money," the phrase used in *Boston Sand & Gravel Co. v. United States*, 1928, 278 U.S. 41, 48, 49 S.Ct. 52, 52, 73 L.Ed. 170. It is not a claim for interest on damages for personal injuries or property damages suffered.

 The United States filed a cross-claim against Sincere for its damages. The White Alder was lost on December 7, 1968, causing damages amounting to $91,244.71. In addition, shortly thereafter, the United

---

**2.** In *Mascuilli*, the court chose as its "final judgment," a judgment that set forth the ultimate terms of liability but which was modified twice with respect to the amount of damages. Although this approach is inconsistent with that of the court in *Canadian Aviator*, where it was deemed necessary that the final judgment strike a conclusive balance with respect to damages, it was justified under the circumstances presented in *Mascuilli*. As the court noted, when the proportion of liability is known, "the fact that [the] court has been unable to compute damages satisfactorily and [its] decisions have been reversed and remanded twice should not work to plaintiff's detriment. She became entitled to interest as of the day the final judgment on liability was rendered, and it would be inequitable to impose the costs associated with the use of money on her rather than on the defendant whose wrongful conduct resulted in the invocation of the judicial process . . . ." 383 F.Supp. at 53.

Of course, it is necessary to determine the precise amount of damages before the interest calculation can be accurately performed, but, once the data is available, interest may be computed as commencing on a date prior to the date when damages were determined.

**3.** The February 22, 1972, decree, as entered and as modified on April 12, 1972, did not properly determine the respective liability of each party.

States spent $24,679.50 for search and salvage expenses. Six percent (6%) interest has been allowed on this in accordance with the February 22, 1972, opinion of this court. While it is anomalous that the claims bear interest at different rates, and in part for different periods, the result is required by statutes enacted by the United States in its sovereign capacity; the rules relating to recovery of interest on claims by the United States and on claims against it are simply different. *See The Comus,* 2 Cir. 1927, 19 F.2d 774, 777, for a reference to this anomaly a half century ago.

## II. Limitation Proceeding Costs

Limitation is a shipowner's privilege, not a right. The costs of this limitation proceeding, including bond premiums, are the price of admission. Not even a limitation petitioner who is exonerated may tax premiums as costs. *American Tobacco Co. v. The Katingo Hadjipatera,* 2 Cir. 1954, 211 F.2d 666.

## III. Trial Costs

Neither party prevailed in toto. Ultimately, Sincere was found to be 35% liable and the White Alder 65% responsible. Costs should be apportioned in the same ratio.

## IV. Appeal Costs

The Clerk of the Circuit Court has not taxed any costs. Normally, costs are taxed against the appellant unless otherwise ordered. But both parties, Sincere and the United States, were appellants. Neither appellant prevailed; so far as it determined that the United States and Sincere were liable, the judgment was affirmed. There appears to be no reason why costs should not follow fault, and be assessed 35% to Sincere, 65% to the United States.

The parties will compute the judgment amounts and tender to the court a proposed form of final judgment.