**TRANSORIENT NAVIGATORS COMPANY S/A**

v.

**The M/S SOUTHWIND, her engines, tackle, apparel, etc., in rem**

**Westwind Africa Line, Ltd., et al.**

**FLOUR MILLS OF NIGERIA, LTD.**

v.

**M/V ASTROS, in rem, and Transorient Navigators Company, S.A. in personam, et al.**

**WESTWIND AFRICA LINE, LTD.**

v.

**The UNITED STATES of America**

**The United States Army Corps of Engineers, New Orleans District.**

**Civ. A. Nos. 77–2107, 77–2410 and 78–199.**

United States District Court, E.D. Louisiana.

May 2, 1985.

William E. Wright, New Orleans, La., for plaintiff Transorient Navigators Co. S/A.

John J. Broders, New Orleans, La., for plaintiff Flour Mills of Nigeria, Ltd.

J. Dwight LeBlanc, Jr., New Orleans, La., for defendant Westwind Africa Line, Ltd.

Allen Van Emmerik, Washington, D.C., for defendant United States and U.S. Army Corps of Engineers.

CASSIBRY, Senior District Judge:

## OPINION ON REMAND

This case was remanded for an apportionment of liability between the United States Army Corps of Engineers ("Corps" or "United States") and the M/S SOUTHWIND ("SOUTHWIND") for a collision between the SOUTHWIND and the M/V ASTROS ("ASTROS") in the Mississippi River Gulf Outlet ("MR–GO" or "channel") on June 17, 1977. *Transorient Navigators Co., S.A. v. M/S SOUTHWIND*, 714 F.2d 1358 (5th Cir.1983).[1] The Fifth Circuit Court of Appeals reversed that part of the original judgment which exonerated the Corps from all liability for the collision. The parties have submitted briefs on the issues presented by the resurrection of the claims against the Corps. In accordance with the Fifth Circuit's mandate, the court now enters the following in support of its judgment on remand.

## I. Apportionment of Liability

■ The collision occurred when the SOUTHWIND sheered into the ASTROS during a port-to-port passage. The SOUTHWIND sheered because of unequal hydrodynamic forces created by the vessel's approach to a submerged bank of a dredged area or borrow pit in the MR–GO. The Corps had completed dredging the borrow pit approximately six to eight weeks prior to the collision. However, the Corps failed to publish any information on the changes in channel conditions caused by the dredging. The failure to provide this information constituted a breach of the Corps' duty to advise mariners under its own regulations and its duty to exercise reasonable care.[2]

The negligence of the Corps in this regard was a proximate and legal cause of the collision. The lack of information concerning the configuration of the borrow pit prevented the pilot of the SOUTHWIND from accurately assessing the danger presented by the right angle cut formed by the western end of the pit. If the pilot had been warned of the change in submerged bank configurations and relative channel depth, he would have taken greater precautions in passing the ASTROS, and avoided the accident.

■ The Fifth Circuit affirmed that the pilot of the SOUTHWIND, Mark Delesdernier, was negligent and that his negligence was a proximate cause of the collision. When two or more negligent parties combine to cause a collision, liability must be allocated between them based upon their comparative fault. *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). Assessing the comparative fault of the Corps and the SOUTHWIND in connection with the damage caused by their concurring negligence, I find that the SOUTHWIND is liable for eighty percent of the damage and the Corps for twenty percent.

■ Pilot Delesdernier was fully aware of the existence and general location of the borrow pit as well as its surface characteristics. Although he did not know the precise contours of the bank at the western end of the pit, he did know that the channel would narrow upon reaching the end of the pit. He understood the hydrodynamic effects of a narrowing channel and was familiar with the phenomena of bank suction and bank sheer. Despite all this, Pilot Delesdernier failed to ascertain the potential

---

1. The details of this case are set out in the Fifth Circuit's opinion, as well as in this court's original opinion, and will not be repeated here. *See Transorient Navigators Co., S.A. v. M/S SOUTHWIND*, 524 F.Supp. 373 (E.D.La.1981).

2. *See* United States Army Corps of Engineers Regulation No. 1130-2-306 (May 8, 1978), *quoted in* 714 F.2d at 1365 n. 3. In claims brought under the Suits in Admiralty Act, the United States is held to the same standard of reasonable care required of private persons. 714 F.2d at 1364–65 (citations omitted).

navigational hazards which he had more than ample reason to expect in this area of the channel.[3] Furthermore, he took no precautionary measures to account for the presence of the borrow pit. In fact, he attempted to pass the ASTROS approximately fifty feet further from the centerline of the channel than was customary in the MR–GO. In summary I find that the pilot's negligence was the main cause of the collision, and therefore, the SOUTHWIND must bear the major portion of liability.

## II. Transorient's Damages

■ After a trial on liability, the parties stipulated to the amount owed Transorient Navigators Company, S.A. ("Transorient"), the owner of the ASTROS, for the damage to its vessel as a result of the collision. Judgment was then entered in favor of Transorient for $645,721.23 with legal interest from the date of the collision plus taxable costs. On remand, the interest award must be amended because interest may not be assessed prior to the date of judicial demand in a claim brought against the United States under the Suits in Admiralty Act ("Act"). 46 U.S.C.A. § 745 (West 1975). Furthermore, in contrast to the discretionary rates permitted in ˎadmiralty suits against private parties, the rate of interest is fixed by the Act at four percent per annum until satisfaction. 46 U.S.C.A. § 743 (West 1975).

■ Transorient takes heed of these statutory limits, but argues that it is entitled to recover from the SOUTHWIND "that portion of the full legal interest for which the United States is not liable by virtue of the act." In essence, Transorient contends that since the United States Army Corps of Engineers and the SOUTHWIND are joint tortfeasors, the innocent˙ plaintiff may recover the full judgment, inclusive of interest, from either one regardless of any ˎapportionment of fault. Although the underlying tenet may be sound, the conclusion reached by Transorient is without foundation in either law or logic.

■ First, Transorient cites no authority for the proposition that a plaintiff who is injured by the concurrent negligence of the United States and a private party may recover from the latter the amount of interest on the judgment which is not recoverable from the United States. Second, if the SOUTHWIND were required to pay the full judgment plus interest on that amount, it could then recover from the United States twenty percent of the total sum paid in accordance with this court's apportionment of fault.[4] The effect of this would be that the United States would pay its portion of the damages plus legal interest at the rate applicable to a private party, a rate which is assuredly higher than that permitted by the Act. If the United States had been sued alone, the amount of interest would clearly be limited to four percent from the date of judicial demand. The plaintiff may not avoid the mandate of the Act under the guise of joint and several liability.

■ I conclude that Transorient may recover from the SOUTHWIND eighty percent of its total damages, or $516,576.98, with legal interest to be assessed on that amount. Transorient may recover from the United States the remaining twenty percent, or $129,144.25, with simple interest at four percent per annum from the date suit was filed, or July 7, 1977.[5] Inter-

---

**3.** A river pilot is required to exercise a special and high degree of skill and care in navigating waters through which he travels, and should inquire into conditions which would arouse the suspicions of an experienced pilot. *See David-son S.S. Co. v. United States,* 205 U.S. 187, 27 S.Ct. 480, 51 L.Ed. 764 (1907); *Petition of M/V Elaine Jones,* 480 F.2d 11 (5th Cir.1973).

**4.** As between the two defendants, any payment to Transorient for lost interest is principal, and therefore, subject to contribution. *See Complaint of Sincere Navigation Corp.,* 447 F.Supp. 672, 675 (E.D.La.1978).

**5.** I used simple interest because compound interest is not presumed to run against the United States. *United States v. Isthmian S.S. Co.,* 359 U.S. 314, 325, 79 S.Ct. 857, 863, 3 L.Ed.2d 845 (1959).

est was originally awarded against the SOUTHWIND from the date of the collision. This award was not disturbed on appeal, nor is the date now disputed. The rate of interest and the method of calculation were not initially determined; therefore, I will address these issues now.

■ Admiralty courts are given a great deal of discretion in setting the rate of prejudgment interest. *Platoro Ltd., Inc. v. Unidentified Remains, Etc.*, 695 F.2d 893, 907 (5th Cir.1983) (citations omitted). Although not binding, state law may be consulted for guidance. *Id.* In the exercise of my discretion, I have decided to assess interest against the SOUTHWIND in accordance with article 2924 of the Louisiana Civil Code.[6] Thus, the rate of interest shall be seven percent from the date of the collision through September 11, 1980; ten percent from September 12, 1980 through September 11, 1981; and twelve percent from September 12, 1981 until the judgment is paid.[7] In addition, interest shall be compounded daily. The duration of this litigation and the high interest rates available during its pendency have convinced me that such a method of calculating interest is fair and reasonable. *See Todd Shipyards Corp. v. Turbine Services, Inc.*, 592 F.Supp. 380 (E.D.La.1984).

## III. The Claims of Flour Mills and Westwind Against the United States

■ The imposition of liability upon the United States resurrects the respective claims of Flour Mills of Nigeria, Ltd. ("Flour Mills") and Westwind Africa, Ltd.

("Westwind").[8] Flour Mills, the owner of the cargo aboard the SOUTHWIND, seeks to recover for the damage to its cargo as a result of the collision. In this case, Flour Mills is precluded from recovering against the SOUTHWIND, the carrying vessel, under the Carriage of Goods by Sea Act. 46 U.S.C. § 1304(2)(a) (West 1975) (exonerates ship and carrier from damage due to navigational error). However, an innocent cargo owner may recover its full damages, including general average contributions, from the noncarrying tortfeasor, in this case, the United States. *The Atlas*, 93 U.S. (3 Otto.) 302, 23 L.Ed. 863 (1876). The United States is then able to recover from the SOUTHWIND for contribution in proportion to fault. *Allied Chemical Corp. v. Hess Tankship Co. of Del.*, 661 F.2d 1044, 1058 (5th Cir.1981). Thus, Flour Mills is entitled to a judgment against the United States for the full amount of its damages. The United States may then recover over from the SOUTHWIND eighty percent of the cargo damages. *See Matter of Ta Chi Navigation (Panama) Corp., S.A.*, 513 F.Supp. 148, 156 (E.D.La.1981), *aff'd*, 728 F.2d 699 (5th Cir.1984).

■ Westwind, the owner of the SOUTHWIND, sued the Secretary of the Army, the Army Corps of Engineers, and the United States for the damage to its vessel as a result of the collision. Because Pilot Delesdernier was a compulsory pilot, his negligence cannot be imputed to Westwind as the owner of the vessel. *Homer Ramsdell Transp. Co. v. Compagnie*

---

**6.** Article 2924 provides, in pertinent part, as follows:

> The rate of judicial interest resulting from a lawsuit pending or filed during the indicated periods shall be as follows: (a) Prior to September 12, 1980, the rate shall be seven percent per annum. (b) On and after September 12, 1980, until September 11, 1981, the rate shall be ten percent per annum. (c) On or after September 11, 1981, the rate shall be twelve percent per annum.

La.Civ.Code art. 2924 (West 1952). This case has been pending during each of the three periods delineated by the statute, and therefore, interest shall be assessed at the rate set for each respective period.

**7.** Counsel for the SOUTHWIND agrees to the assessment of prejudgment interest in accordance with the state rate for the respective time periods set forth in article 2924, but suggests that post-judgment interest be assessed in accordance with 28 U.S.C. section 1961. This suggestion complicates an already complex matter for no discernible reason. Thus, I shall make one award of interest at the state rate.

**8.** Throughout the record in this case, Flour Mills has been referred to as "Flower Mills." The court has been informed by counsel of record that the proper spelling is that used in this opinion on remand.

*Generale Transatlantique,* 182 U.S. 406, 21 S.Ct. 831, 45 L.Ed. 1155 (1901). Thus, Westwind correctly states that as between it and the United States, the United States is the only negligent party. Westwind, in effect an innocent plaintiff in this case, may recover its full damages from the United States. However, the fact that the pilotage was compulsory does not affect the liability of the ship, *The China,* 74 U.S. (7 Wall.) 53, 19 L.Ed. 67 (1869), and the United States may recover from the SOUTHWIND eighty percent of West-wind's damages.

Because this case was originally tried solely on the issue of liability, the damages of Flour Mills and Westwind have not yet been proved. Therefore, the issue of damages is referred to Magistrate Chasez for disposition. The Clerk of Court shall withhold entry of final judgment until the amount of damages owed Westwind and Flour Mills has been determined.