775 F.2d 221
 1987 A.M.C. 143
 SCNO BARGE LINES, INC., Appellee,
v.
SUN TRANSPORTATION COMPANY, INC., Appellee,
United States of America, Appellant.
SCNO BARGE LINES, INC., Appellee,
v.
SUN TRANSPORTATION COMPANY, INC., Appellant,
United States of America, Appellee.
SCNO BARGE LINES, INC., Appellant,
v.
SUN TRANSPORTATION COMPANY, INC. and United States of
America, Appellees.
 Nos. 84-2313, 84-2374, and 84-2375.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1985.
Decided Oct. 9, 1985.
Rehearing Denied Nov. 11, 1985.
 
 Stephanie J. Grogan, Washington, D.C., for appellant.
 Gary T. Sacks & John Sandberg, St. Louis, Mo., for appellees.
 Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and NICHOL*, Senior District Judge.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 SCNO Barge Lines, Inc. (SCNO) brought this action against Sun Transportation Company (Sun) and the United States (Government) for the cost of repairing seven barges damaged by grounding while in tow on the Missouri River. The district court[1] entered judgment in favor of SCNO, apportioned liability for the damages between the defendants at a ratio of 40% against the Government and 60% against Sun, and awarded prejudgment interest at the rate of 10% against Sun only. All three parties appeal from the judgment.
 
 
 2
 The Government contends that it was immune from liability, and that the district court erred in finding it negligent. Sun contends the district court erred in finding it negligent because the Government was completely responsible for the accident. SCNO contends that the district court erred in limiting the rate of prejudgment interest against Sun to 10% and in failing to award interest on the portion of damages assessed against the Government. Additionally, SCNO contends that it was entitled to a joint and several judgment against both tort-feasors, thus enabling it to collect interest on the whole judgment against Sun. Sun asserts that the Government is liable in contribution for any interest on damages in excess of Sun's 60% portion plus interest thereon. We affirm on liability, but remand for the ascertainment of interest and for reconsideration of an award of interest against the Government.
 
 
 3
 I. BACKGROUND.
 
 
 4
 The accident giving rise to this appeal occurred in October 1980 on a portion of the Missouri River known as Mile 246. In the fall of every year, the Missouri is subject to "shoal" (build up of sediment) and "moving bottom" (sediment carried in and out of the river floor) due to swift currents and lower water levels. This movement of sediment lowers the depth of the water and reduces the width of the river channel, making it less navigable.
 
 
 5
 The Government, acting through the Coast Guard and the Corps of Engineers (Corps), provides a variety of services to assist navigation on the Missouri. Both agencies attempt to maintain and mark where necessary, without dredging, a navigable channel approximately 9 feet deep and 300 feet wide. Marking a navigable channel is usually done by placing buoys and other marking devices called nuns. The Coast Guard is aware of the heavy reliance placed by mariners upon the accuracy of the buoys, and the buoys are rechecked more often in known problem areas.
 
 
 6
 In addition to marking the channel, both agencies regularly patrol the Missouri, "sounding" it so as to ascertain conditions relevant to navigation. The findings of these patrols are reported under certain standardized procedures. The Coast Guard's reports are published weekly in its Local Notice to Mariners and broadcast at regular intervals on the Coast Guard radio station. With respect to the Corps, channel inspectors prepare reports of instances where they find less than nine feet of water depth in the navigation channel. These findings are relayed to the Corps office in Napoleon, Missouri. Commercial vessels regularly check with the Corps office and receive information concerning river conditions. The Corps also prepares Boat Reports, daily compilations of information regarding river conditions and written steering directions which describe shallow areas of the Missouri discovered during sounding. These steering directions are transmitted to vessels through "mail boxes" strategically placed along the Missouri.
 
 
 7
 Mile 246 was a problem area on the Missouri in the fall of 1980. Six groundings occurred there between September 28 and October 27. The Coast Guard reported shoaling at Mile 246 in its Notice to Mariners Nos. 46-80 and 47-80, dated October 1 and 7, 1980. In addition, from October 11 to October 21, Coast Guard safety radio broadcasts cautioned that "shoaling exists between Miles 246.0 and 246.8."
 
 
 8
 On October 26, 1980, the Coast Guard Cutter OBION sounded Mile 246 and set buoys marking a navigation channel. On October 27, 1980, the M/V DAN C. BURNETT, a towboat with barges in tow, grounded at the lower end of Mile 246. The M/V DAN C. BURNETT is owned by the appellant Sun and is the towboat involved in the October 30 grounding at issue in this appeal. Captain Oberle of the DAN C. BURNETT reported the grounding to the Coast Guard and the Corps. The Coast Guard Cutter OBION sounded and rebuoyed the area on October 28, 1980. A Local Notice to Mariners was then released and a broadcast dispatched (No. 3901-80) as follows:
 
 
 9
 Shoaling previously reported from Mile 246.0 to Mile 246.8 MOR (Missouri River) has been remarked and rebuoyed. Mariner transitting [sic] this area from Chariton DM [daymark] 246.8 L/B [left bank] down to a white flag approx. 300 ft. Then cross to a R/B temp DMK [right bank temporary daymark] approx. 200 yrds. above Bushwacker Lt. [light] 246.0 R/B with a channel width of 200 ft. wide, channel rebuoyed with 3 black cans 8 ft. and 2 red nuns 8 1/2 ft. Waverly gauge reading 11.3R. 28 October 80.
 
 
 10
 The Corps issued a channel report and steering directions stating that the Corps had found a depth of eight and one-half feet for a length of 300 feet at Mile 246 on October 28, 1980.
 
 
 11
 On October 30, 1980, the DAN C. BURNETT was downbound on the Missouri with nine loaded barges in tow. During the morning, the DAN C. BURNETT passed the Coast Guard Cutter OBION. Captain Oberle had radio contact with Captain Pierce of the OBION as the OBION was going upstream. Also that morning, the DAN C. BURNETT had radio communication with the M/V LESTA K, several hours after the LESTA K had passed through Mile 246 going upstream. Sometime in the afternoon, the DAN C. BURNETT reached Mile 246. Taking no special precautions to avoid grounding, it proceeded downriver and grounded approximately in the middle of the marked channel, one-half to three-fourths of a mile above the location of its October 27 grounding. Seven of SCNO's barges were damaged in the accident, in the amount of $98,575.37.
 
 
 12
 On November 1, 1980, the M/V LESTA K grounded at Mile 246. Subsequent to this accident, the Coast Guard channel report for the area of Mile 246 stated, in part, "caution working bottom!"
 
 
 13
 The district court entered judgment in favor of SCNO, finding that both Sun and the Government had contributed to the accident by their negligence. As noted above, the court awarded prejudgment interest against Sun only. All parties have appealed, Sun and the Government contesting the court's finding of liability and SCNO seeking additional prejudgment interest.
 
 
 14
 II. DISCUSSION.
 
 
 15
 A. Sun's Liability.
 
 
 16
 Sun contests the district court's finding that it was 60% liable for SCNO's damages.[2] Sun argues here, as it did at trial, that in the Eighth Circuit a vessel is not negligent with regard to a grounding if it strikes an unknown obstruction while inside a marked channel. Mid-America Transportation Co. v. National Marine Service, Inc., 497 F.2d 776, 779 (8th Cir.1974). The district court rejected Sun's argument because it found that the existence of a shoal at Mile 246 was not unexpected and Sun should have taken precautions to avoid it.
 
 
 17
 We review the findings of a district court sitting without a jury in an admiralty case under the "clearly erroneous" standard. United Barge Co. v. Notre Dame Fleeting & Towing Service, Inc., 568 F.2d 599, 602 (8th Cir.1978). This standard of review also applies to a district court's conclusions on negligence. Id. The record in this case discloses that both captains of the DAN C. BURNETT knew that a number of vessels had grounded at Mile 246 in the month preceding October 30, 1980. The DAN C. BURNETT itself had grounded at this location just three days before the accident. Nevertheless, Sun decided not to use available procedures to check the channel for shoaling prior to proceeding through it. Sun argues that it was entitled to rely on buoys set by the Government on October 26, 1980. We must reject this argument in light of the fact that the DAN C. BURNETT had grounded in this very channel just three days before the accident here in question, only one day after buoys were set. On the basis of this record, the district court's conclusion concerning Sun's negligence was not clearly erroneous. Accordingly, it will be affirmed.
 
 
 18
 B. The Government's Liability.
 
 
 19
 The district court concluded that the Government was partially liable for the accident because its navigation reports, issued by both the Coast Guard and the Corps, contained misleading information about conditions at Mile 246. With regard to the Coast Guard's reports, the court stated:
 
 
 20
 At least six groundings in one month's time occurred at Mile 246 (prior to October 30, 1980 grounding) yet not one safety report stating the unreliability of the buoys due to rapid shoaling was issued. After the resetting of the buoys on October 28, no notice in regards to rapid shoaling was broadcast, even though the channel had shifted in less than 24 hours and there was reason to believe it would continue to do so.
 
 
 21
 SCNO Barge Lines, Inc. v. Sun Transportation Co., 595 F.Supp. 356, 362 (E.D.Mo.1984).
 
 
 22
 The court also made a specific conclusion regarding the Corps' negligence:
 
 
 23
 The Corps of Engineers also breached its duty of due care owed to mariners. 33 C.F.R. Sec. 209.325(g)(s) and (n) require the Corps of Engineers to disseminate detailed information regarding channel conditions, especially uncharted shoals. The Missouri River is regularly sounded and the results are transcribed into channel reports. Channel Inspectors Nolte, Vanderwerken, and Bower (deposition testimony) testified that Mile 246 was a particularly bad spot during October, 1980 and had to be sounded at least ten times (much more than usual). Captains Herbst, Oberle and Carroll testified that channel reports routinely include channel depth and information pertaining to shoaling and moving river bottoms. The evidence also indicates that these channel reports are heavily relied on by navigators on the Missouri River. There was also testimony about the Corps of Engineer's customary practice of stationing a vessel at known trouble spots on the river.
 
 
 24
 The last channel report (prior to the October 30 grounding) was issued by the Corps of Engineers launch OSAGE III on October 28. That channel report only stated the depth of the channel--8 1/2 feet deep. The report contained nothing about shoaling or the moving river bottom at Mile 246. The omission of such information rendered this channel report inaccurate and misleading.
 
 
 25
 Id. at 363.
 
 
 26
 After considering the record, we are satisfied that the district court's conclusion concerning the Government's negligence was not clearly erroneous, and that conclusion will also be affirmed.
 
 
 27
 The Government has gone to great lengths to convince us that the district court based its determination of negligence on the Coast Guard's failure to deviate from its routine patrol and make a special trip to recheck the buoys at Mile 246. The Government argues that its decision not to deviate from a routine patrol was a discretionary act for which it cannot be held liable. We do not address this argument because we think the court based its conclusion of liability on the Government's misleading safety and channel reports, not on its failure to recheck the channel markers.
 
 
 28
 C. Prejudgment Interest.
 
 
 29
 In its cross-appeal, SCNO argues that the district court erred in establishing the rate of prejudgment interest at 10% and in awarding interest only on the damages attributable to Sun. We turn first to the contention that the district court erred in limiting interest to 10% against Sun.
 
 
 30
 As the district court noted, prejudgment interest in this circuit should be awarded at a rate in keeping with the prevailing rate of interest in effect during the applicable time period. SCNO presented evidence that its actual cost of borrowing at the time its barges were repaired was 14.4%. However, it did not present evidence to prove that this was the prevailing rate. Consequently, the court refused to award interest at the rate of 14.4%, and established a rate of 10%, apparently based on prejudgment interest rates established by other courts in prior cases.
 
 
 31
 This court recently considered a similar issue in Ohio River Co. v. Peavey Co., 731 F.2d 547 (8th Cir.1984). The district court in that case concluded that no evidence of prevailing interest rates had been presented, and established a rate of 10% on the basis of other cases in which that rate had been applied. We reversed and remanded for further consideration on the proper rate of interest, stating:
 
 
 32
 Ascertainment by the district court of the appropriate prejudgment interest rate in this case was a factual question, not a legal one, however, and hence it was not within the district court's discretion to rely on conclusions reached by other courts as authority for determining the rate of interest that would fully compensate Ohio. Nor could the district court take judicial notice that a 10 percent rate was appropriate when evidence was offered to the contrary. See Fed.R.Evid. 201(b). Neither approach would truly constitute an exercise of discretion based on evidence presented to the court. Because we believe the district court abused its discretion in awarding prejudgment interest at a rate of 10 percent, we reverse and remand so that the district court may properly exercise its discretion to determine a rate of prejudgment interest which will fully compensate Ohio.
 
 
 33
 Id. at 550. Ohio River is the law of this circuit. Because we do not think there is any meaningful distinction between this case and Ohio River, we must reverse the district court's judgment as to the rate of prejudgment interest against Sun, and remand for the establishment of an interest rate in the manner required by Ohio River.
 
 
 34
 SCNO also argues that, because Sun and the Government are joint tort-feasors, the district court should have entered a joint and several judgment which would permit SCNO to recover the full amount of its damages from either of them. If it is allowed to collect full damages from Sun, SCNO contends that Sun should pay prejudgment interest on the entire amount, under the rule that an injured party may recover in full from one joint tort-feasor, where the other joint tort-feasor is unable to pay its full share of the liability. See Restatement (Second) of Torts, Sec. 880 (1979). Sun disagrees contending that liability is several, and that it is responsible only for interest on 60% of the loss.
 
 
 35
 In United States v. Reliable Transfer Co., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251, (1975), the Supreme Court held that "when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault." Id. at 411, 95 S.Ct. at 1715-16.
 
 
 36
 Sun asserts that in adopting the rule of proportionate damages in Reliable Transfer, the Supreme Court sought to bring the law into closer harmony with the Brussels Convention of 1910. Article 4 of the Brussels Convention provides for proportional fault without joint and several liability toward third parties (except in actions for personal injury or death). Accordingly, Sun submits that in Reliable Transfer, the Supreme Court rejected the general rule of joint and several liability to third parties. We disagree.
 
 
 37
 The Supreme Court subsequently explained its ruling in Reliable Transfer stating:
 
 
 38
 Reliable Transfer merely changed the apportionment from equal division to division on the basis of relative fault. But we did not upset the rule that the plaintiff may recover from one of the colliding vessels the damage concurrently caused by the negligence of both. Compare Reliable Transfer Co. (apportionment of damages on the basis of relative fault between plaintiff and defendant who concurrently caused grounding), and The Schooner Catharine v. Dickinson, [17 How. 170] 58 U.S. 170 [15 L.Ed. 233] (1855) (equal apportionment of damages between libelant and respondent vessels where both at fault in collision), with The Atlas, [3 Otto 302] 93 U.S. 302 [23 L.Ed. 863] (1876) (in suit by insurer of cargo against one of two ships whose concurrent fault caused collision, the insurer is entitled to recover in full, despite the rule of equal apportionment, because the insurer is not a wrongdoer), and The Juniata, [3 Otto 337] 93 U.S. 337, 340 [23 L.Ed. 930] (1876) (same: if respondent vessel has any rights against nonparty vessel, they "must be settled in another proceeding").
 
 
 39
 Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 272 n. 30, 99 S.Ct. 2753, 2762 n. 30, 61 L.Ed.2d 521 (1979). In other words, the decision in Reliable Transfer did not affect the general rule in admiralty that the plaintiff may recover the full amount of its damages from either of two joint tort-feasors. Accordingly, to be fully compensated, SCNO is entitled to recover the full amount of its damages, including prejudgment interest on 100% of its damages. Thus, SCNO is entitled to recover from Sun interest on all its damages at the rate prescribed by the district court.[3]
 
 
 40
 SCNO also contends the district court erred in declining to award interest against the United States on its 40% share of the liability. The Suits in Admiralty Act provide that the district court in its decree for a money judgment "may include * * * interest at the rate of 4 percentum per annum." 46 U.S.C. Sec. 743, but such interest shall only be assessed from the date of filing suit against the United States, 46 U.S.C. Sec. 745. Although discretionary language is used in section 743, the preceding section, 46 U.S.C. Sec. 742, stipulates that actions should be heard and determined according to principles of law applicable in like cases between private parties.
 
 
 41
 We reject the Government's contention that the district court's jurisdiction of this action is based on the Public Vessels Act, 46 U.S.C. Sec. 781, et seq., which prohibits the assessment of interest against the Government. Here the liability of the United States is based on its failure to disseminate timely notice concerning shoaling, rather than on negligence in the operation of Corps and Coast Guard vessels. Thus, the district court properly invoked the Suits in Admiralty Act as the appropriate basis of jurisdiction. See United States v. United Continental Tuna Corp., 425 U.S. 164, 175-76, 96 S.Ct. 1319, 1326, 47 L.Ed.2d 653 (1976).
 
 
 42
 The Government also suggests that the trial court exercised proper discretion in denying prejudgment interest against the United States in a case such as this where separate but concurrent conduct of a third party and the United States caused damage to plaintiffs SCNO. We disagree.
 
 
 43
 The purpose of awarding prejudgment interest in admiralty suits is to compensate the injured party in full, and prejudgment interest should be awarded in the absence of exceptional or peculiar circumstances. This rule has uniformly been applied to non-governmental litigants in admiralty cases. Ohio River Co. v. Peavey Co., 731 F.2d 547, 549 (8th Cir.1984); Cargill, Inc. v. Taylor Towing Service, Inc., 642 F.2d 239, 241-42 (8th Cir.1981); Federal Barge Lines, Inc. v. Republic Marine, Inc., 616 F.2d 372, 373 (8th Cir.1980) and cases cited therein. In our view, the same rule applies to admiralty suits against the United States. In this case, the district court gave no reason for denial of prejudgment interest. Accordingly, we think it appropriate to remand this interest issue as to the Government to the district court for reconsideration in light of this opinion.
 
 
 44
 Pertinent to our discussion of interest and our determination that SCNO is entitled to recover from Sun full interest on all of its damages regardless of any limitation on interest owed by the United States, we need to comment on Sun's alternative claim that it is entitled to contribution from the Government for 40% of the full interest it may pay to SCNO. Sun relies on Central Rivers Towing, Inc. v. City of Beardstown, Illinois, 750 F.2d 565 (7th Cir.1985) for direct support of this contention.
 
 
 45
 We reject the analysis of Central Rivers Towing because it permits the assessment of interest against the Government in excess of the 4% rate allowed by the Suits in Admiralty Act. It is well settled that apart from constitutional requirements, interest does not run on a claim against the United States in the absence of a specific provision by contract, or statute, or express consent by the United States, see United States v. Louisiana, 446 U.S. 253, 264-65, 100 S.Ct. 1618, 1625-26, 64 L.Ed.2d 196 (1980).
 
 
 46
 The law of contribution recognizes that non-liability operates as a defense. Comment (g) of the Restatement (Second) of Torts Sec. 886A reads:
 
 
 47
 g. Defenses. If the one from whom contribution is sought is not in fact liable to the injured person, he is not liable for contribution. This is true, for example, if he has one of the immunities from liability heretofore recognized for * * * governments. * * * In other words, his defense cannot be circumvented by the plaintiff's recovery against another tortfeasor, followed by a suit for contribution.
 
 
 48
 Here, under the Suits in Admiralty Act, the Government is only liable to plaintiffs SCNO for prejudgment interest from the time of the filing of the suit, at the rate of 4%. The Suits in Admiralty Act's waiver of the Government's general defense of sovereign immunity limits interest to this rate. Hence, the Government cannot be held liable for contribution to defendant Sun for the interest Sun may pay on the Government's 40% share of the judgment, except to the extent that the trial court may assess interest on the Government's share.
 
 
 49
 III. CONCLUSION.
 
 
 50
 We affirm the district court's conclusion as to liability, but remand for the establishment of a proper rate of prejudgment interest against Sun, for reconsideration of an interest award against the United States, and for appropriate modification of the judgment consistent with this opinion.
 
 
 51
 SCNO is entitled to costs on the appeals as against Sun and the United States. Sun and the United States shall bear their own costs on these appeals.
 
 
 
 *
 The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri
 
 
 [2]
 Sun also claims that the district court erred in dismissing its cross-claim for indemnity from the Government for any judgment against it and attorneys' fees, costs, and expenses of suit because the Government was responsible for the grounding, and Sun's liability, if any, was minor and passive. The facts simply do not support Sun's claim. Because the district court found Sun 60% liable for the grounding, Sun was clearly at fault, and its fault was not technical or passive. Accordingly, the district court properly dismissed Sun's indemnity cross-claim
 
 
 [3]
 If on remand, interest is assessed against the Government, Sun will be liable only for the difference in the rate of interest assessed against the Government and the rate of interest assessed against Sun, and for interest awarded prior to the filing of this suit. See our discussion of interest against the Government, infra