TRANSORIENT NAVIGATORS COMPANY, S.A., Plaintiff-Appellee, Cross-Appellant,

v.

M/S SOUTHWIND, her engines, tackle, apparel, etc., In Rem and Westwind Africa Line, Ltd., Defendants-Third Party Plaintiffs-Appellants, Cross-Appellees,

v.

M/V ASTROS, In Rem and Transorient Navigators Co., S.A. In Personam, et al., Third-Party Defendant-Appellees, Cross-Appellants.

FLOUR MILLS OF NIGERIA, LTD., Plaintiff-Appellee,

v.

M/V ASTROS, In Rem and Transorient Navigators Co., S.A. In Personam, et al., Defendants-Appellees, Cross-Appellants,

v.

WESTWIND AFRICA LINE, LTD., and the M/S SOUTHWIND, her engines, tackle, apparel, Etc., In Rem, Appellant-Cross Appellee.

WESTWIND AFRICA LINE, LTD, Plaintiff-Appellant,

v.

The UNITED STATES of America and the U.S. Army Corp of Engineers, New Orleans District, Defendants-Appellees.

No. 85–3282.

United States Court of Appeals, Fifth Circuit.

April 28, 1986.

J. Dwight LeBlanc, Jr., Kenneth J. Servay, New Orleans, for Westwind Africa Line and The M/S Southwind.

William E. Wright, New Orleans, La., for Transorient Navigators Co. & M/V Astros.

Glenn G. Goodier, John J. Broders, New Orleans, La., for Flour Mills Nigeria, Ltd.

Allen vanEmmerik, James A. Lewis, Admiralty & Shipping Section, Dept. of Justice, Washington, D.C., for U.S.A. & U.S. Army Corp of Engineers.

Before THORNBERRY, POLITZ, and RANDALL, Circuit Judges.

THORNBERRY, Circuit Judge:

This admiralty case arises from the collision of two ships near a U.S. Army Corps of Engineers dredging site in the Mississippi River-Gulf Outlet (MR–GO). Westwind Africa Line appeals the district court's allocation of fault between Westwind's ship, the SOUTHWIND, and the United States. Westwind also contends that the district court erred in awarding the United States contribution against the SOUTHWIND and in computing the interest owed by Westwind to Transorient Navigators Co., owner of the ASTROS, the second ship involved in the collision. Transorient cross-appeals, arguing that the district court erred in refusing to permit it to recover from Westwind the interest on its damages that by statute it cannot recover from the United States. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

The M/S SOUTHWIND and the M/V ASTROS collided in the MR–GO on June 17, 1977 when the SOUTHWIND sheered across the center line. The sheer was the result of hydrodynamic forces caused by the underwater configuration of a borrow pit left by the U.S. Army Corps of Engineers. The SOUTHWIND was carrying a cargo owned by Flour Mills of Nigeria, Ltd. Both ships and the cargo suffered damage in the collision.[1] Transorient sued Westwind in personam and the SOUTHWIND in rem. Transorient later sued the United States. Westwind sued Transorient in personam and the ASTROS in rem. Westwind also sued the United States, alleging that the Corps of Engineers was negligent in digging the borrow pit and in failing to warn pilots of the pit's configuration. Flour Mills sued Transorient in personam, the ASTROS in rem, and the United States for damage to its cargo. The district court consolidated these actions. At trial the district court found that the entire fault for the collision rested with the SOUTH-WIND's compulsory pilot, Mark Delesder-

nier. Transorient Navigators Co. S/A v. M/S Southwind, 524 F.Supp. 373, 380–81 (E.D.La.1981).

On appeal, this Court found that the district court had clearly erred in absolving the United States of all fault in the collision. The Court concluded that the Army Corps of Engineers' failure to publish information concerning the configuration of the borrow pit constituted a failure to use due care and further held that the Corps' breach of duty was a proximate cause of the collision. Transorient Navigators Co., S.A. v. M/S Southwind, 714 F.2d 1358, 1367, 1370 (5th Cir.1983). The Court also held that the district court had clearly erred in finding that Pilot Delesdernier knew of the borrow pit's underwater contours; rather, we concluded that the pilot should have known of the pit's characteristics and that he breached his duty to inform himself of them. Id. at 1369. We remanded the case to the district court for allocation of liability on the basis of comparative fault under the rule of United States v. Reliable Transfer Co., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975).

On remand the district court allocated 80% of the fault for the collision to Pilot Delesdernier and 20% to the United States. Transorient Navigators Co. S/A v. M/S Southwind, 609 F.Supp. 634, 636 (E.D.La. 1985). The court awarded Transorient $516,576.98 against the SOUTHWIND and $129,144.25 against the United States. The court assessed interest against the SOUTHWIND in accordance with La.Civ. Code Ann. art. 2924 (West Supp.1985), compounded daily. The court assessed interest against the United States at the 4% simple rate provided by 46 U.S.C. §§ 743, 745 (1982). The court rejected Transorient's argument that it was entitled to recover from the SOUTHWIND the portion of interest for which the United States was not liable by virtue of §§ 743 and 745. 609 F.Supp. at 637.

The district court's finding of liability against the United States revived the

---

1. For a complete account of the facts in this case, see our earlier opinion, Transorient Navi-

gators Co., S.A. v. M/S Southwind, 714 F.2d 1358 (5th Cir.1983).

claims of Flour Mills and Westwind. The court concluded that both Flour Mills and Westwind could recover their full damages against the United States.[2] The court held further that the United States could recover from the SOUTHWIND 80% of the damages paid by the government to Flour Mills and Westwind. *Id.* at 638–39.

Westwind appeals the district court's judgment. Transorient cross-appeals.

## II. DISCUSSION

### A. *Appeal by Westwind*

Westwind contends that the district court erred in apportioning fault between Pilot Delesdernier and the United States. It also argues that the court erred in awarding the United States contribution against the SOUTHWIND and in assessing interest against the SOUTHWIND for the damages it owes Transorient. We consider these points in turn.

■ *1. Allocation of Fault* —The district court apportioned 80% of the fault for the collision to Pilot Delesdernier and 20% to the Army Corps of Engineers. We review the court's apportionment of fault under the "clearly erroneous" standard. *See Canal Barge Co. v. China Ocean Shipping Co.*, 770 F.2d 1357, 1362 (5th Cir. 1985); Fed.R.Civ.P. 52(a). We have carefully reviewed the record on this appeal, as we did on the first appeal in this case. Although we might have apportioned fault differently in the first instance, the district court's 80%–20% division is well supported by the record. Nothing in our earlier opinion is to the contrary.

■ *2. Contribution Against the SOUTHWIND.*—The district court permitted the United States to recover from the SOUTHWIND 80% of the damages that the government was ordered to pay Flour Mills and Westwind. Westwind contends that the court erred in awarding contribution.

The district court properly held that because Delesdernier was a compulsory pilot, his negligence could be imputed to the SOUTHWIND, but not to Westwind. *See Homer Ramsdell Transportation Co. v. La Compagnie Generale Transatlantique*, 182 U.S. 406, 416–17, 21 S.Ct. 831, 835–36, 45 L.Ed. 1155 (1901); *The Steamship China v. Walsh*, 74 U.S. (7 Wall.) 53, 67–69, 19 L.Ed. 67 (1869); 2 S. Bellman, A. Jenner, B. Chase & J. Loo, Benedict on Admiralty § 9 (7th ed. 1985). Thus, Westwind was without fault in the collision. If the United States is to receive contribution, it must do so against the SOUTHWIND *in rem.*

Westwind argues that the United States cannot recover contribution against the SOUTHWIND for two reasons: (1) an action against a ship *in rem* will lie only if the plaintiff has a maritime lien against the ship, and the United States has no lien against the SOUTHWIND; (2) even if the United States had a maritime lien against the SOUTHWIND, it never arrested the ship, a necessary prerequisite for an action *in rem*. The United States responds that neither a maritime lien nor seizure of the ship is necessary for contribution *in rem* when the issue of the ship's liability has been fully litigated. Because we resolve the second point against the United States, we do not address the first.

Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims prescribes the procedure for obtaining jurisdiction *in rem* in admiralty cases. Rule C(2) requires the filing of a verified complaint stating that the property which is the subject of the action "is within the district or will be during the pendency of the action." Rule C(3) provides for issuance of a warrant for the arrest of the vessel or other property that constitutes the *res* of the action. The United States did not follow the procedures specified in Rule C. It filed no cross-claim for contribution against the SOUTHWIND, and it did not procure a warrant for the vessel's arrest.

---

**2.** Flour Mills is barred from recovering against the SOUTHWIND by the Carriage of Goods by Sea Act § 4(2)(a), 46 U.S.C. § 1304(2)(a) (1982), which provides that "[n]either the carrier nor

the ship shall be responsible for loss or damage arising or resulting from ... [a]ct, neglect, or default of the ... pilot ... in the navigation or in the management of the ship."

The United States contends that the district court had jurisdiction over the SOUTHWIND *in rem* notwithstanding the government's failure to observe Rule C's procedures because the SOUTHWIND had already been brought before the court to respond to Transorient's action *in rem,* and Westwind had posted a bond for its release. But this argument overlooks the distinction between a special bond and a general bond. Rule E(5)(a) permits *in rem* process to be stayed or the property released "on the giving of security, to be approved by the court or clerk, or by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court." This form of security, the special bond, permits the shipowner to restrict his appearance to the action for which the bond has been posted. *See Overstreet v. Water Vessel "Norkong,"* 706 F.2d 641, 644 (5th Cir.1983). By contrast, a shipowner may post a general bond, "conditioned to answer the judgment of such court in all or any actions that may be brought thereafter in such court in which the vessel is attached or arrested." Rule E(5)(b).

The bond posted by Westwind to secure the SOUTHWIND's release states:

KNOW ALL MEN BY THESE PRESENTS, that Transorient Navigators Company S/A had brought suit *in rem* against the M/S SOUTHWIND in the United States District Court for the Eastern District of Louisiana, bearing Civil Action No. 77–2107 "E" and effected seizure of the vessel. . . .

. . . .

NOW, THEREFORE, we, Westwind Africa Line, Ltd., as principal, and Insurance Company of North America, as surety, are held and firmly bound unto Transorient Navigators Company S/A in the sum of ONE MILLION TOW [sic] HUNDRED FIFTY–THOUSAND AND NO/100 ($1,250,000.00) DOLLARS, lawful money of the United States for the payment whereof to the said Transorient Navigators Company S/A, its successors or assigns, we jointly and severally bind ourselves, our heirs, executors and administrators, firmly by these presents.

NOW, the condition of the above obligation is such that if said principal and surety abide by all orders, interlocutory or final, of the Court and pay said Transorient Navigators Company S/A, upon presentation of a certified copy of final decree, the amount awarded by the final decree rendered. in the Court to which process is returnable, or in any appellate court, then the foregoing obligation is to be void, but otherwise shall remain in full force and effect.

This language makes clear that the bond posted by Westwind is a special bond, conditioned solely on payment of a judgment in favor of Transorient. The bond does not run in favor of any other party to the litigation. This bond brings the SOUTHWIND before the court for the sole purpose of answering Transorient's claim. *See Overstreet,* 706 F.2d at 644; 7A J. Moore & A. Pelaez, Moore's Federal Practice ¶ E.13[2], at 620 (2d ed. 1983). If the United States wished to file a cross-claim for contribution against the SOUTHWIND, it should have had the vessel arrested in accordance with the procedures specified in Rule C.[3] Because it did not, we hold that

---

**3.** We note that the *"Reliable Transfer* contribution shortcut," *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 271 n. 30, 99 S.Ct. 2753, 2762 n. 30, 61 L.Ed.2d 521 (1979), does not apply here. In *United States v. Reliable Transfer,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), the Court abandoned the divided damages rule in maritime collision cases in favor of apportionment of liability on the basis of fault. *See id.* at 411, 95 S.Ct. at 1715. In *Edmonds* the Court stated:

[T]he general rule is that a person whose negligence is a substantial factor in the plaintiff's indivisible injury is entirely liable even if other factors concurred in causing the injury. Normally, the chosen tortfeasor may seek contribution from another concurrent tortfeasor. If both are already before the court— for example, when the plaintiff himself is the concurrent tortfeasor or when the two tortfeasors are suing each other as in a collision case like *Reliable Transfer*—a separate contribution action is unnecessary, and damages are simply allocated accordingly.

443 U.S. at 271 n. 30, 99 S.Ct. at 2762 n. 30. Here the SOUTHWIND was not "before the

the district court lacked jurisdiction to award the United States contribution against the SOUTHWIND *in rem.* *See Pacific Employers Insurance Co. v. M/V Gloria,* 767 F.2d 229, 234 (5th Cir.1985) (district court erred in entering judgment against vessel *in rem* where no *in rem* process was issued, the vessel was not arrested, no answer was filed on the vessel's behalf, and the vessel owner did not waive attachment); *Associated Metals & Minerals Corp. v. SS Portoria,* 484 F.2d 460, 461–62 (5th Cir.1973) (same).[4]

■ *3. Interest Against the SOUTH-WIND.*—The district court ordered the SOUTHWIND to pay interest to Transorient for the vessel's 80% share of damage to the ASTROS at the rate prescribed by La.Civ.Stat.Ann. art. 2924 (West Supp. 1985): 7% from the date of the collision through September 11, 1980; 10% from September 12, 1980 through September 11, 1981; and 12% from September 12, 1981 until the judgment is paid. The court ordered that the interest be compounded daily. *See Transorient,* 609 F.Supp. at 638. Westwind contends that the district court abused its discretion in ordering that the interest be compounded daily.

■ In *Todd Shipyards Corp. v. Auto Transportation, S/A,* 763 F.2d 745 (1985), this Court considered and rejected an almost identical contention. That litigation began in 1975. The district court entered judgment in 1984. The court assessed interest according to art. 2924, compounded daily. This Court "perceive[d] no abuse of discretion either in this methodology or in the resulting award." *Id.* at 753. Westwind attempts to distinguish *Todd* on the

court" for any purpose other than responding to Transorient's action.

4. As noted above, we do not address either the need for a maritime lien to obtain contribution from a vessel *in rem* or the related question whether a maritime lien for contribution arises against a vessel tortfeasor in favor of a nonvessel joint tortfeasor that was not itself injured by the vessel's tortious conduct. Nor do we address Westwind's assertion that the United States is now barred by laches from bringing a contribution action against the SOUTHWIND.

ground that there evidence of the high interest rates prevailing during the litigation was presented to the district court, while in this case Transorient offered no such evidence. This argument is meritless. The district court may properly take judicial notice of prevailing interest rates. *See* Fed.R.Evid. 201(b) (permitting judicial notice of adjudicative facts that are "generally known within the territorial jurisdiction of the trial court"). We hold that the district court did not abuse its discretion in ordering that the interest against the SOUTHWIND be compounded daily.

*b.   Cross-Appeal by Transorient*

■ Although the district court awarded Transorient interest under art. 2924 for the 80% of its damages attributable to the SOUTHWIND, it awarded only 4% simple interest for the 20% of damages attributable to the United States. Moreover, the court permitted interest to run against the government only from the date Transorient filed suit against the Army Corps of Engineers. The district court based this interest award against the United States on 46 U.S.C. §§ 743, 745 (1982).[5] Transorient concedes that the statute limits the interest it can recover against the United States, but argues that it should be able to recover from the SOUTHWIND that portion of "the full legal interest" that it is statutorily barred from recovering against the United States. The district court rejected this argument. It reasoned that if Transorient were allowed to recover interest on the entire damage award from the SOUTHWIND, then the vessel would be entitled to

5. Section 743 states in part: "A decree against the United States ... may include costs of suit, and when the decree is for a money judgment, interest at the rate of 4 per centum per annum until satisfied, or at any higher rate which shall be stipulated in any contract upon which such decree shall be based." 46 U.S.C. § 743 (1982). Section 745 states in part: "[N]o interest shall be allowed on any claim prior to the time when suit on such claim is brought as authorized by section 742 of this title unless upon a contract expressly stipulating for the payment of interest." *Id.* § 745.

recover 20% of the interest in contribution from the United States. This contribution, the court held, would contravene the interest limitation contained in §§ 743 and 745. *See Transorient,* 609 F.Supp. at 637.

We conclude that the district court erred. We base our analysis on two well-established principles of admiralty. First, in admiralty cases "prejudgment interest is not awarded as a penalty but as compensation for use of funds by the defendant to which the plaintiff is entitled." *Todd,* 763 F.2d at 753. Second, an innocent plaintiff may recover his full damages from any one of two or more joint tortfeasors, leaving that tortfeasor to seek contribution or indemnity from its co-tortfeasors. *See Phoenix Insurance Co. v. Steamboat Atlas,* 93 U.S. (3 Otto) 302, 319–20, 23 L.Ed. 863 (1876); *SCNO Barge Lines, Inc. v. Sun Transportation Co.,* 775 F.2d 221, 227 (8th Cir.1985); *Central Rivers Towing, Inc. v. City of Beardstown,* 750 F.2d 565, 575 (7th Cir.1985). Under these principles, Transorient must be permitted to recover from the SOUTHWIND 100% of its damages, including interest on the full amount as provided by La.Civ.Code Ann. art. 2924, compounded daily. *See SCNO Barge Lines,* 775 F.2d at 227; *Central Rivers Towing,* 750 F.2d at 575. Only in this way can Transorient be fully compensated for the damage to the ASTROS.

Westwind argues that if the SOUTHWIND is liable to Transorient for 100% of its damages, including full interest, then it should be able to recover 20% of the total damage payment in contribution from the United States. The courts have split over whether full contribution should be permitted in this situation. In *SCNO Barge Lines,* the Eighth Circuit denied the nongovernmental tortfeasor full contribution against the United States. The court stated:

> [U]nder [§§ 743 and 745], the Government is only liable to plaintiffs SCNO for prejudgment interest from the time of the filing of the suit, at the rate of 4%. The Suits in Admiralty Act's waiver of the Government's general defense of sovereign immunity limits interest to this rate. Hence, the Government cannot be held liable for contribution to defendant Sun for the interest Sun may pay on the Government's 40% share of the judgment, except to the extent that the trial court may assess interest on the Government's share.

775 F.2d at 228.

The Seventh Circuit reached a contrary result in *Central Rivers Towing.* Relying on *Complaint of Sincere Navigation Corp.,* 447 F.Supp. 672, 675 (E.D.La.1978), the court held that the nongovernmental tortfeasor was liable to the plaintiff for 100% of the plaintiff's damages, including full interest; the tortfeasor was then entitled to recover from the government that percentage of the total amount paid, including interest, representing the percentage of fault attributable to the government. *See* 750 F.2d at 575–77. The court reasoned that the nongovernmental tortfeasor's claim for contribution against the United States represented not a claim for principal and interest, but a single claim for a certain percentage of the total damages paid to the plaintiff. *See id.* at 576–77; *see also Sincere Navigation,* 477 F.Supp. at 675 (offering a similar rationale). Thus, the award of contribution did not contravene the interest limits established in 46 U.S.C. §§ 743, 745.

We agree with the Eighth Circuit's position in *SCNO Barge Lines.* Were we to adopt the Seventh Circuit's view instead, we would create an anomaly: if the government was 100% at fault, then it would only have to pay 4% interest from the time suit was filed; if the government was only partially at fault, by contrast, then it would have to pay an amount equal to its proportion of principal damages plus interest from the date of the harm at the rate applicable to private tortfeasors.[6] Thus, the practical effect of the Seventh Circuit's

---

**6.** Indeed, in some cases, the United States might find it cheaper to be held 100% at fault than to be found only partially at fault, in view of the different interest rates that would apply.

approach is to evade the interest limitation in 46 U.S.C. §§ 743, 745 in cases in which the United States is a joint tortfeasor. We cannot believe that Congress intended such a peculiar result. Bearing in mind the principle that waivers of sovereign immunity are to be strictly construed, *see, e.g., Garcia v. United States,* 776 F.2d 116, 118 (5th Cir.1985); *Interfirst Bank Dallas, N.A. v. United States,* 769 F.2d 299, 306 (5th Cir. 1985), we hold that the United States cannot be made to pay more than 20% of Transorient's damages plus 4% interest from the date Transorient filed suit against the Army Corps of Engineers.

### III. CONCLUSION

We affirm the district court's apportionment of fault between Pilot Delesdernier and the Army Corps of Engineers. We reverse the district court's award of contribution to the United States against the SOUTHWIND. We affirm the district court's calculation of the interest to be assessed against the SOUTHWIND in favor of Transorient, except that Transorient should be permitted to recover interest from the SOUTHWIND on 100% of its damages, not merely the 80% attributable to Pilot Delesdernier's negligence. Finally, we hold that the United States cannot be made to pay more than 20% of Transorient's damages plus 4% interest from the date upon which Transorient filed suit against the government. We AFFIRM in part, REVERSE in part, and REMAND to the district court for judgment in accordance with this opinion.