**438**

ELMINI LAMA, INC., Plaintiff,

v.

The TUG NATALIE EYMARD, Barges RF120, RF329, in rem and Pearl C. Eymard, Inc., in personam, Defendants.

Civ. A. No. 82–2269.

United States District Court,
E.D. Louisiana.

July 22, 1983.

J. Dwight LeBlanc, Jr., James R. Holmes, New Orleans, La., for plaintiff.

Ronald A. Johnson, New Orleans, La., for defendants.

CASSIBRY, District Judge:

Plaintiff, Elmini Lama, Inc., the owner and operator of the cargo ship M/V MINI LAMA, brings this action against defendant Pearl C. Eymard, Inc., and *in rem* against its tug, the M/V NATALIE EYMARD, for damages allegedly sustained when the two vessels collided on the Mississippi River on February 28, 1981. Eymard has counterclaimed, alleging that the MINI LAMA rather than the NATALIE EYMARD caused the collision and all resulting damages. The case was tried before the court sitting without a jury on July 1, 1983. After due consideration of all the evidence and relevant navigational rules, the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. At all material times, plaintiff, Elmini Lama, Inc., owned and operated the M/V MINI LAMA, an ocean-going cargo ship approximately 210 feet in length, 49 feet in breadth, and 15.9 feet in depth. She was powered by two diesel engines capable of producing 1,500 horsepower.

2. At all material times, defendant, Pearl C. Eymard, Inc., owned and operated the M/V NATALIE EYMARD, a towing vessel 65 feet long and 22 feet wide, with 1200 horsepower. When the collision occurred, the NATALIE EYMARD had three grain-loaded barges in tow, the RF–120, RF–329 and PV–5980.

3. At all material times, navigation of the M/V MINI LAMA was controlled by Crescent River Pilots' Association pilot Thomas J. Mailey; her captain was Dimitrios Milliaressis. Navigation of the NATALIE EYMARD was controlled by her captain, Thomas Fazende.

4. The MINI LAMA departed from Chalmette slip at about 10:00 p.m. (2200 hours) on February 27, 1981 and proceeded down the Mississippi River toward its destination, Port Kaiser, Jamaica.

5. The NATALIE EYMARD also was proceeding down the Mississippi River below the Port of New Orleans during the late evening hours of February 27, 1981. The tug was pushing all three grain barges, with the RF–329's stern linked to the NATALIE EYMARD's bow, the PV–5980's

stern linked to RF–329's bow, and the RF–120 spiked off the PV–5980's port side.

6. Visibility and traveling conditions that evening were good. The MINI–LAMA's pilot, Thomas Mailey, testified that it was a "clear night," that he had "no trouble seeing," and that there was "very little current" in the Mississippi River. Visibility was approximately two to three miles. A slight fog did not blanket the river area and affect visibility until at least 1:00 a.m. on February 28, 1981—about a half-hour after the collision occurred.

7. As the MINI LAMA approached the Oakville Light vicinity, Mailey observed the NATALIE EYMARD about one to two miles down river. Mailey prepared to overtake and pass the NATALIE EYMARD, which was travelling roughly in the middle of the river at about five miles per hour. Mailey radioed Captain Fazende on VHF Channel 67, and the two agreed that the MINI LAMA would pass the NATALIE EYMARD with a two whistle signal on the NATALIE EYMARD's port side.

8. Proceeding at her full speed of 10 to 12 miles per hour, the MINI LAMA started to pass the NATALIE EYMARD between Wills Point and Belair Light. The river in this area is at least a half mile wide. Thus, as the NATALIE EYMARD maintained her straightaway course down the river's middle, the MINI LAMA had nearly a quarter-mile in which to pass the NATALIE EYMARD on the latter's port side.

9. Believing he had plenty of room in which to overtake the NATALIE, Pilot Mailey stopped studying the MINI LAMA's passing course, took his eyes off the NATALIE for several critical minutes, and radioed another ship captain down river about an unrelated matter. After completing the call, Mailey put his radio microphone down, looked up, and was startled to see the MINI LAMA's bridge only a few feet away from the NATALIE EYMARD's bridge.

10. The MINI LAMA's close passage alongside the NATALIE EYMARD created enough suction to draw the NATALIE EYMARD's RF–120 barge into the MINI LAMA's starboard bow. The two vessels collided near Belair Light at about 12:30 a.m. (0030 hours) on February 28, 1981.

11. The NATALIE EYMARD maintained her mid-river course and speed throughout the attempted overtaking and never turned to her port side into the MINI LAMA's path.

12. The MINI LAMA could have steered further to the NATALIE EYMARD's port side and avoided the accident. Pilot Mailey did not keep his vision and attention directed to the overtaking endeavor to ensure that the MINI LAMA would not veer into the NATALIE EYMARD's way.

13. The MINI LAMA's failure to stay out of the NATALIE EYMARD's way was the sole proximate cause of the vessel's collision.

14. The parties have stipulated that the collision caused the MINI LAMA and her owners, Elimini Lama, Inc., to sustain $44,273.00 in damages and caused the NATALIE EYMARD and her owners, Pearl C. Eymard, Inc., to sustain no damages.

### CONCLUSIONS OF LAW

1. This action falls within the court's maritime jurisdiction, and venue properly rests in the Eastern District of Louisiana. 28 U.S.C. § 1333.

2. The collision between the M/V NATALIE EYMARD and M/V MINI LAMA was caused by the sole fault of the M/V MINI LAMA.

3. At the time the collision occurred, the navigation of both vessels was governed by the Navigation Rules for Harbors, Rivers and Inland Waters Generally, 33 U.S.C. § 151 *et seq.,* and in particular by two rules pertaining to passing, 33 U.S.C. §§ 206 and 209: [1]

---

1. On December 24, 1981, about 10 months after the collision, these rules were superseded by the Inland Navigational Rules, 33 U.S.C. § 2001 *et seq.* (1981). These new rules, like § 209 of the superseded rules, require overtaking vessels to "keep out of the way of the vessel being overtaken." 33 U.S.C. § 2013.

**440**

§ 209. *Overtaking vessel to keep out of the way*

Notwithstanding anything contained in these rules every vessel, overtaking any other, shall keep out of the way of the overtaken vessel.

§ 206. *Vessel having right-of-way to keep course*

Where, by any of these rules, one of the two vessels is to keep out of the way, the other shall keep her course and speed.

4. Under 33 U.S.C. § 209, the M/V MINI LAMA, as the overtaking vessel, was required to keep out of the way of the M/V NATALIE EYMARD, the overtaken vessel. *See also Bockenheim Unterweiser v. M/V Voyager*, 495 F.Supp. 521 (E.D.La.1980); *B.F. Diamond v. M/V Fernside*, 252 F.2d 381 (5th Cir.1958). The MINI LAMA, "[t]he overtaking vessel, must give the one ahead such wide berth as to avoid any contingencies that might arise such as sheering by the vessel caused by suction, current or tide." *Bockenheim Unterweiser, supra*, at 525.

5. The MINI LAMA failed to fulfill its duty to give the NATALIE EYMARD wide berth and keep out of the NATALIE's way. Rather than maintain a safe distance from the NATALIE's port side, where the Mississippi River provided plenty of room for a successful passing, the MINI LAMA proceeded at full speed perilously close to that side. Indeed, the distance between the two vessels was so short that the resulting suction caused them to collide. The MINI LAMA thus violated 33 U.S.C. § 209.

6. The MINI LAMA's failure to keep out of the NATALIE's way may be explained, at least partially and perhaps entirely, by her pilot's own failure to keep his attention and vision directed to the overtaking maneuver.

7. By contrast, the NATALIE EYMARD fully complied with the 33 U.S.C. § 206 requirement that she, as the overtaken vessel, maintain her course and speed. Throughout the attempted passing, the NATALIE EYMARD kept her mid-river course and roughly five-knot speed. The NATALIE thus violated none of the applicable Rules of the Road and cannot be held liable for the collision.

8. The collision's proximate cause resulted solely from the statutory faults of the MINI LAMA and from her improper navigation under circumstances that were well known to her navigators. *The Pennsylvania*, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148 (1874).

9. In accordance with these Findings of Fact and Conclusions of Law, judgment shall be rendered in favor of defendants and against plaintiff, Elmini Lama, Inc.