**ALTER BARGE LINE, INC., Appellant,**

v.

**TPC TRANSPORTATION CO., and American Barge Co., Inc., Appellee.**

**No. 85–2341.**

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1986.

Decided Sept. 22, 1986.

Raymond L. Massey, St. Louis, Mo., for appellant.

Hubert I. Binowitz, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and STROM,* District Judge.

STROM, District Judge.

Plaintiff, Alter Barge Line, Inc. (Alter Barge), prevailed in a suit brought in the United States District Court for the Eastern District of Missouri on negligence claims against TPC Transportation Co. (TPC). The district court held that a vessel owned by TPC was solely at fault for a collision which occurred on the Mississippi River. As such, the district court denied a counterclaim brought against Alter Barge by TPC and American Barge Co., Inc. We affirm.

## BACKGROUND

This dispute involves a collision between two vessels and their tow which occurred on the Mississippi River at approximately 4:15 a.m., on December 19, 1982. As a direct result of the accident, Alter Barge and TPC incurred stipulated damages of $131,874.32 and $520,775.49, respectively.

Prior to the collision, plaintiff's vessel, the M/V Frank R. Alter (Alter) was moored on the right bank of the river, heading downstream (the right descending bank). Defendant TPC's tow boat, the M/V Richard A. Coonrod (Coonrod), was proceeding downriver at approximately twelve knots. The Alter's thirty-barge tow was arranged five long and six wide. Each barge was nearly two hundred feet long and thirty-five feet wide. The Coonrod arranged her barges five long and five wide, with each barge being the same size as those towed by the Alter. The combined length of each vessel and its tow equaled approximately 1,150 feet.

Several hours before the collision, a heavy fog had settled over the lower Mississippi River just below Cairo, Illinois, causing all river traffic to cease. After the fog lifted and visibility improved, the Coonrod departed from Misco Fleet, mile 947, and headed downstream. The Alter was moored at mile 942.9 and its pilot, Captain Adam Kidd, arranged to get under way soon after the Coonrod left Misco Fleet. The trial court found that by the time the Alter unmoored, it had traveled two hundred to two hundred fifty feet upstream, and her tow had moved from shore about fifty feet at the starboard bow and about three hundred feet at the starboard stern. At this point in time, the Coonrod approached mile 943.6.

According to the findings of the trial court, it was at this point the captains of the vessels established radio contact and agreed to a "two-whistle passing." The court found that the Coonrod planned to come by the Alter on her port side, leaving seventeen hundred feet between the two vessels. The Alter agreed to hold her position while the Coonrod passed as quickly as possible.

When the vessels collided, the district court found "the Coonrod was executing a hard port turn with the bow of her tow facing the left descending bank at the bow of the Coonrod's tow and the stern of the Alter. In other words, when the two ves-

* The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

sels collided, the Coonrod's heading was 70 degrees less than that of the Alter." Memorandum Op. 4. The collision was held to have occurred eight hundred feet from the right descending bank.

Immediately prior to the collision, the Coonrod was engaged in a fuel conservation program and had been running her engines at eight hundred revolutions per minute instead of the normal nine hundred revolutions per minute. The reduced revolutions per minute caused reduced maneuverability. Moreover, the trial court found the Coonrod was running without an operational peep light until approximately two minutes before the accident. A peep light is normally placed at the front end of a tow and is used by pilots in nighttime travel to determine the swing of the tow.

Upon review of the evidence, the Court concluded that the dispute was within its admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and the navigation of both vessels was governed by the Inland Navigational Rules, 33 U.S.C. § 2001, *et seq.* In applying those rules, the Coonrod was found to be an overtaking vessel with a "statutory duty to keep out of the Alter's way." Memorandum Op. 8 (citing 33 U.S.C. § 2013(a)). With this in mind, the trial court held:

> The direct and proximate cause of the collision giving rise to this lawsuit was the failure of Captain Ivie (The Coonrod's pilot) to give Captain Kidd a wide berth as the Coonrod passed the Alter's position. *Elmini Llama, Inc. v. Natalie Eymard,* 567 F.Supp. 438, 440 (E.D.La. 1983). Furthermore, the Alter's position was not a contributing factor to the accident. Even at 800 feet from the right descending shore, the Alter's stern was still well away from either the Coonrod's desired course or the channel. As such, the Coonrod was solely at fault for the collision.

Memorandum op. at 8.

## DISCUSSION

On appeal, TPC essentially presents two contentions: (1) it did not negligently cause the collision; and (2) even if it was negligent, the district court erred in failing to apportion some of the fault to Alter Barge. Our analyses of these contentions is governed by the well-settled standard for reviewing district court findings in admiralty cases. In *McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20, 24 (1954), the United States Supreme Court held: "[i]n reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous." See also *Ohio River Co. v. Peavey Co.,* 731 F.2d 547, 549 (8th Cir.1984).

■ The district court held the Coonrod's pilot was negligent because he failed to use all available means to navigate his tow in violation of Rule 7 of the Inland Navigational Rules, 33 U.S.C. § 2007(a). Additionally, the court found the Coonrod's pilot negligent for his failure to maintain his vessel on a mid-river course, allowing it to collide with the Alter approximately eight hundred feet from shore. The defendants argue the district court clearly erred in making these findings. We disagree. Upon review of the record, we are not left with "a definite and firm conviction that a mistake has been made." *McAllister,* 348 U.S. at 20, 75 S.Ct. at 8, 99 L.Ed. at 24.

The defendants also contend the district court erred in failing to apply the rule of *THE PENNSYLVANIA,* 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1873). In *THE PENNSYLVANIA,* the United States Supreme Court held that a vessel which has violated a navigational statutory duty must clearly show not only that its statutory violation did not cause the accident, but the violation could not have contributed to or caused the accident. *THE PENNSYLVANIA,* 86 U.S. at 136, 22 L.Ed. at 151. Defendants argue the evidence of record and the court's findings indicate the Alter violated the navigational rules which impose a duty upon the overtaken vessel with respect to: (1) the overtaking agreement between her and the overtaking vessel; (2) the maintenance of her course and speed; (3) the lookout re-

quirement; (4) the requirement to sound a whistle when getting underway; (5) the requirement to maintain an active listening watch; (6) the requirement to signal when operating a stern propulsion; and (7) the requirement to avoid the risk of collision.

Based upon the alleged violation of these seven duties, the defendants argue the invoked *PENNSYLVANIA* rule would require a district court finding that the statutory fault of both vessels contributed to the accident. A violator of a navigational statute may not be held liable under the *PENNSYLVANIA* rule, however, if the other party to the accident is found to be the sole cause. *Otto Candies, Inc. v. M/V MADELINE D*, 721 F.2d 1034, 1036 (5th Cir.1983). Even assuming the Alter did commit the statutory faults alleged by defendants, contributory liability under the *PENNSYLVANIA* rule would not attach because the district court found the Coonrod to be the sole cause of the collision—a finding which is not clearly erroneous.

Accordingly, the judgment of the district court is affirmed.