19 F.3d 10
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert H. BENFIELD, Sr.; Shirley White Benfield,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 92-1464.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 29, 1993.
Decided: March 8, 1994.
As Modified May 16, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte; Robert D. Potter, District Judge. (CA-90-275-C-C-P)
 Argued: Robert Haney Benfield, Jr., Law Offices of Robert H. Benfield, Jr., Decatur, Ga, for appellants.
 James Michael Sullivan, Asst. U.S. Atty., Charlotte, NC, for appellee.
 On brief: Jerry W. Miller, U.S. Atty., Charlotte, NC, for appellee.
 W.D.N.C.
 REVERSED AND REMANDED.
 Before WIDENER and PHILLIPS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Robert H. Benfield, Sr. and his wife brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. Sec. 2671 et seq., for injuries he suffered when the automobile he was driving collided with a United States Army truck. Although the United States stipulated as to its liability, a bench trial was held on the question of Benfield's damages. The district court awarded some damages but ruled that the plaintiff had failed to prove any loss of income as a result of the accident. Benfield appeals that ruling. We reverse and remand for modification of the damages award.
 
 
 2
 * The accident occurred on the evening of September 14, 1986, as Benfield was returning to his home from a canoeing trip in the North Carolina mountains. The camouflaged truck was parked broadside across the highway without lights. Both northbound lanes were completely blocked. Although he was wearing his seat belt, Benfield suffered a shattered right patella, closed head trauma with loss of consciousness, abrasions and bruises to his head, injuries to his ribs, and loosening of his front teeth. He was taken to a hospital as an emergency patient. Eventually surgery was performed on his knee at another hospital.
 
 
 3
 At the time of the accident, Benfield was a 65-year old, self-employed dentist who had been practicing in Charlotte, North Carolina since 1952. He generally worked forty hours a week. Benfield was released from the hospital on September 19, 1986, three days after his knee surgery. By coincidence, he had no patients scheduled for September 22 through 26, 1986. Benfield returned to work on a limited basis the next week and began checking his dental hygienist's work on September 30, 1986. Over the next five months, he increased the number of tasks he was able to perform. Benfield testified that by February 22, 1987, he was capable of performing all types of dental work, although he was "not up to full production." According to Benfield, it was not until June 1987, nine and one-half months after the accident, that he was able to return to approximately the same schedule he had worked in September 1986. On July 27, 1987, however, Benfield filed a claim for disability insurance benefits on which he stated that "all work" was resumed on February 23, 1987.
 
 
 4
 In the wake of his accident, Benfield and his wife brought this action against the United States. Benfield sought damages for medical expenses, lost wages, and pain and suffering. His wife sought damages for loss of support, consortium, and services. The parties stipulated as to liability, and a bench trial was held on the damages issues. The district court awarded Mrs. Benfield $1,000 in damages. It also granted Dr. Benfield $42,581.93 in damages for medical expenses, pain and suffering, property damage, and permanent partial disability. The court refused, however, to award any damages for loss of income, ruling that Benfield had failed to prove any loss of income as a direct and proximate result of the accident. Benfield appeals.
 
 II
 
 5
 We review the district court's damage assessment under the clearly erroneous standard. United States Fire Ins. Co. v. Allied Towing Corp., 966 F.2d 820, 825 (4th Cir.1992). Under the Federal Tort Claims Act, "damages are determined by the law of the State where the tortious act was committed." Hatahley v. United States, 351 U.S. 173, 182 (1956). See also 28 U.S.C. # 8E8E # 1346(b), 2674. Because Benfield's injury occurred there, the law of North Carolina governs the issue we consider. The Supreme Court of North Carolina has declared: "In cases of personal injury resulting from defendant's negligence, the plaintiff is entitled to recover the present worth of all damages sustained in consequence of the defendant's tort. These are understood to embrace indemnity for ... medical expenses and for loss of time, or loss from inability to perform ordinary labor, or capacity to earn money." Mintz v. Atlantic Coast Line R. Co., 65 S.E.2d 120, 123 (N.C.1951).
 
 
 6
 Benfield presented evidence to show that he was entitled to $50,203.60 in damages representing lost income because of the accident. The testimony presented by Benfield was grounded on a review of his appointment book and payment and collection records for the six months preceding the accident. The witnesses thus derived pre-accident monthly earnings. Benfield then compared that figure with a post-accident monthly earnings total, computed from appointment books and posting records for the nine and one-half months following the accident, to arrive at a lost income amount.
 
 
 7
 The government presented expert testimony by Dr. Thomas H. Havrilesky, a professor of economics at Duke University. Dr. Havrilesky reviewed Benfield's cash collections and expenses for two years prior to the accident. He compared data obtained from that analysis with Benfield's posting figures during the post-accident period, taking into account variable expenses and taxes, and arrived at a figure of $17,862.00 in maximum possible lost earnings for the period following the accident.
 
 
 8
 The district court excluded lost income from Benfield's damages calculation because his income was greater for the three fiscal years after the accident than for the three years preceding the accident. In doing so, we believe the district court erred. While such an analysis would appear to be relevant when considering a claim of loss of future earnings capacity, Benfield does not claim any damages for lost income for periods after July 1987.
 
 
 9
 All plaintiff and government witnesses agreed that Benfield lost income over the nine and one-half months following the accident.[1] They only disagree as to the amount of loss. The district court opined that Dr. Havrilesky's computations provide a more accurate assessment of the present value of lost earnings over the nine and one-half months period. We cannot disagree with that conclusion, but we are persuaded that in the absence of any contradictory evidence, Benfield should be awarded the $17,862 which Havrilesky, the government's expert witness, computed as lost past income. Since the testimonial record supports that amount with considerable certitude,[2] in our view, a remand for an additional trial would be a waste of judicial resources. That portion of the district court's judgment denying Benfield an award of lost past wages is, therefore, reversed and remanded to the district court with instructions to add $17,862 in lost wages to the award of $42,581.93 granted to Benfield for medical expenses, pain and suffering, property damages, and permanent partial disability.
 
 
 10
 Pursuant to 28 U.S.C. Sec. 1961, Benfield is entitled to post-judgment interest on the original damages award of $42,581.93. Such interest should be calculated from March 23, 1992, the date of the original judgment. Post-judgment interest is likewise to be awarded on the $17,862 in damages for lost income. Because that award is based on the testimony of the government's expert witness at trial, the damages were ascertainable as of the March 23, 1992, judgment and interest should accrue from that date. See Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827 (1990). Finally, the award of damages for lost income to Benfield renders the district court's award of costs to the United States pursuant to Fed. R. Civ. Pro. 68 erroneous. On remand, the district court is to award interest consistent with this opinion and disallow the award of costs to the appellee.
 
 
 11
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 In its factual conclusions, the district court found that by "February 22, 1987, Benfield [had] resumed all phases of work, but not up to his full production." In spite of Benfield's limited capacity, the district court found that he could perform all work on February 23, 1987. Benfield does not contest the factual finding that he was able to perform the full range of activities required to fulfill his duties as a dentist by February 22. He argues, however, that he was only able to perform those tasks on a limited basis, and the district court made no finding that Benfield was able to work the same number of hours or undertake the same amount of work that he had been performing at the time of the accident. We agree that the nine and one-half month period is the proper one for calculation of damages
 
 
 [2]
 Benfield testified that all of the lost income for the period ending in June 1987 was caused by injuries he received in the accident. Dr. Havrilesky could not determine whether all of the $17,862 loss was attributable to the accident, but he assigned no other reason for the loss and testified that Dr. Benfield's income was steady during the two years preceding the accident