36 F.3d 1092
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Paul Allen CRIST, Plaintiff-Appellant,
v.
Paul LAUDENSLAGER, Defendant-Appellee,
and
Stafford County, Virginia; Richard L. Ashby; John
Donnelly; Mark Russo; George Moncure, Defendants.
 No. 92-6981.
 United States Court of Appeals, Fourth Circuit.
 Argued April 1, 1993.
Decided Oct. 5, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert G. Doumar, District Judge. (CA-90-1763-N).
 ARGUED: Arletrice Mechele Dickerson, Hunton & Williams, Norfolk, VA, for appellant.
 Jack L. Gould, Fairfax, VA, for appellee.
 ON BRIEF: D. Arthur Kelsey, Hunton & Williams, Norfolk, VA, for appellant.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Paul Allen Crist appeals the district court's order denying relief in his 42 U.S.C. Sec. 1983 action against several Stafford County Jail officials for injuries he sustained while he was being held for trial at the jail. The district court determined that Crist had not met his burden, under a section 1983 Eighth Amendment claim, of proving that defendants were deliberately indifferent to any specific risk of harm other inmates presented to Crist. Crist contends that the district court's use of a subjective standard in determining deliberate indifference was legal error and that the court made a clearly erroneous factual determination. We are of opinion that the district court properly determined that Laudenslager was not deliberately indifferent to a known risk of harm to Crist, and accordingly, we affirm.
 
 I.
 
 2
 On March 15, 1990, Crist entered A Block at Stafford County Jail, awaiting trial on charges of perjury and sodomy. That day, Crist phoned a relative and asked her to request on his behalf a transfer to a different cellblock. Without providing a reason for the request, Crist was transferred to G Block. Later that month Crist alleges that he was given a bloody nose by Carlos Thomas, one of the inmates involved in the assault, resulting in this action. Crist did not tell jail officials about the incident.
 
 
 3
 On the morning of April 9, 1990, Crist met with his attorney, Tandy Rinehart, in a large open room at the prison to discuss his arraignment and planned entering of a guilty plea, to take place that day. Crist allegedly told Mrs. Rinehart that two inmates were hassling and threatening him due to the nature of his crime and that he wanted another housing transfer. When Laudenslager entered the room, Mrs. Rinehart and Crist approached him to request the transfer. Mrs. Rinehart and Laudenslager generally disagree as to what was said during the conversation but both agree that Mrs. Rinehart asked if Crist could be transferred to a single cell.[1] Leaving the same cellblock was not mentioned. Mrs. Rinehart contends she indicated to Laudenslager that Crist was scared of being hurt in a fight because of threats two inmates were making because of his sex offense charges. Laudenslager contends that even when he specifically asked if Crist had a problem with his current housing, Mrs. Rinehart did no more than request a transfer to a single cell and gave no reason for the request other than being uncomfortably housed. Laudenslager stated that no single cells were available but that he would see what he could do. Neither Crist nor Mrs. Rinehart commented on Laudenslager's reply. The Stafford County Jail receives between two to four transfer requests a day. Jail policy requires the official to ascertain from the inmate if an emergency necessitating the transfer exists. If none exists, requests are to be made in writing to the Captain or First Sergeant.
 
 
 4
 Crist was arraigned, entered his guilty plea, visited with his relatives, and shortly thereafter was returned to G block. During this visitation Crist did not tell any of his relatives that he was scared or being threatened or that he needed a housing transfer. Crist also made transfer requests to deputies Mark Russo and George Moncure when they escorted him that day. When the deputies asked whether Crist had any problem making necessary the transfer, he replied that he did not. One of the deputies denied he had told Crist that he knew why trouble was coming.
 
 
 5
 That night while in the general recreation area, Crist was beaten by inmates Carlos Thomas and David Washington. He told no one. The next morning, April 10, deputies Russo and Moncure relayed Crist's transfer requests to Laudenslager, and Crist was placed in a different cellblock. Two days later, on April 12, Crist complained of a toothache and asked to see the dentist. It was discovered that he had a broken jaw and after lengthy prodding Crist admitted that the injury was a result of a fight with inmates Thomas and Washington four days prior. After having his jaw repaired and wired shut, Crist was questioned by Laudenslager regarding the incident. At Laudenslager's suggestion Crist initiated criminal prosecution against Thomas and Washington.[2]
 
 
 6
 On October 19, 1990, Crist filed this section 1983 complaint seeking $500,000 in damages in the United States District Court for the Eastern District of Virginia against Stafford County Virginia, Sheriff Richard Ashby, Chief Jailor John Donnelly, Sergeant Laudenslager, Deputy Russo, and Deputy Moncure. The complaint alleged a claim of deliberate indifference when he was not transferred to another cell block after he allegedly notified jail officers and his attorney that he was in danger from other inmates. The case was referred to a magistrate for an evidentiary hearing. Prior to the full evidentiary hearing on the 1983 claim, the magistrate recommended granting motions for summary judgment made by Ashby and Donnelly, and Crist voluntarily dismissed his claim against Stafford County. A full evidentiary hearing on the case against the remaining three defendants was held on November 1, 1991. The magistrate judge issued his Report and Recommendation on March 10, 1992, finding no deliberate indifference and recommending that judgment be entered in favor of all defendants. Upon Crist's objections, the matter came before the district court for de novo review pursuant to 28 U.S.C. Sec. 636(b)(1)(c). After reviewing the transcript and record the district court found that defendants were not deliberately indifferent to any specific risk of harm the two inmates posed to Crist. In determining deliberate indifference the court asked whether the defendants "knew of a specific risk of harm or were so unreasonably unaware of a specific risk as to charge them with a culpable state of mind." Accordingly, the district court adopted the magistrate's Report and Recommendation and orders that the case be dismissed against the three remaining defendants.
 
 
 7
 Crist appeals the dismissal of his 1983 action as to defendant Laudenslager. Crist brings two issues for consideration on appeal. First, whether the district court used the appropriate state of mind standard in determining "deliberate indifference" necessary for an Eighth Amendment violation. Second, whether the district court's finding that the conversation between Mrs. Rinehart and Laudenslager was insufficient to charge Laudenslager with deliberate indifference toward the risk inmates Thomas and Washington posed to Crist was clearly erroneous. We take these two issues in turn.
 
 II.
 
 8
 We review de novo Crist's challenge to the legal standard of deliberate indifference applied by the magistrate and the district court in this Eighth Amendment claim. See Meekins v. United Transp. Union, 946 F.2d 1054, 1056 (4th Cir.1991). It is the settled rule that "the unnecessary and wanton infliction of pain" by a prison official constitutes a cruel and unusual punishment forbidden by the Eighth Amendment. Hudson v. McMillian, 60 U.S.L.W. 4151, 4152 (U.S.1992) (citation omitted). The precise mental state necessary to establish an unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. Hudson, 60 U.S.L.W. at 4152.[3] In cases alleging that prison officials failed to protect an inmate from harm from other inmates the appropriate standard is whether the official was deliberately indifferent to a known, specific risk of harm. See Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3259 (1991); Ruefly v. Landon, 825 F.2d 792, 793 (4th Cir.1987). Crist does not argue that the deliberate indifference standard does not apply to his case, rather he contends that the proper inquiry in determining deliberate indifference is an objective one, not the subjective inquiry used by the district court.
 
 
 9
 In determining deliberate indifference, the district court asked whether defendants "knew of a specific risk of harm or were so unreasonably unaware of a specific risk as to charge them with a culpable state of mind." Crist suggested at trial that the deliberate indifference standard required the court to determine whether the evidence, viewed objectively, proved that Laudenslager should have known Crist faced a risk of harm from inmates Thomas and Washington. In his view the proper Eighth Amendment inquiry is whether defendants "know or have reason to know of a specific risk of harm to plaintiff." The district court stated that the Fourth Circuit, in Pressly and Ruefly, had rejected the negligence standard in assessing Eighth Amendment liability in failure to protect cases. Accordingly, the district court rejected Crist's objective inquiry, stating that the cases on Eighth Amendment liability for failure to protect require some amount of intent by jailers. The court found the record and findings of the magistrate devoid of any showing of mental culpability on the part of Laudenslager. The district court also noted that the conversation between Mrs. Rinehart and Laudenslager, which Crist alleges was sufficient to make him aware of the specific danger inmates posed to Crist, was insufficient even on an objective level to charge Laudenslager with knowledge of any specific risk of harm.
 
 
 10
 We are of opinion that the district court made the proper state of mind inquiry under the Eighth Amendment deliberate indifference standard. The Eighth Amendment protects an inmate from physical harm at the hands of fellow inmates resulting from "the deliberate or callous indifference of prison officials to specific known risks of such harm." Pressly, 816 F.2d at 979. The state of mind requirement is a subjective one. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.); see Wilson v. Seiter, 501 U.S. 294 (1991). The Supreme Court and this circuit have expressly rejected a negligence standard in determining deliberate indifference. E.g., Whitley v. Albers, 475 U.S. 312, 319 (1986); Moore, 927 F.2d at 1315-17. It is clear that merely negligent conduct on the part of prison officials who fail to protect a prisoner from a risk of harm posed by fellow inmates does not constitute a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. We affirm the district court's rejection of the objective standard.
 
 
 11
 Crist also claims that the magistrate required him to demonstrate that Laudenslager had a subjective realization of the risk in order to prevail. Crist argues that such a standard connotes actual intent which is too high a standard for deliberate indifference analysis. We agree that actual intent is not necessary for a showing of deliberate indifference, i.e., Laudenslager need not have been purposefully out to harm Crist by ignoring a known danger from inmates Thomas and Washington. Yet, although the magistrate used the "subjective realization" phraseology at one point in his report and recommendation, we are of opinion that the magistrate applied the correct state of mind inquiry in determining deliberate indifference.[4] In any case, on de novo review the district court did not use the subjective realization language and clearly made the proper subjective inquiry into Laudenslager's state of mind. Accordingly, we affirm the district court's use of a subjective inquiry in determining whether Laudenslager was deliberately indifferent.
 
 III.
 
 12
 Crist contends that the district court's determination that Laudenslager had no notice of the risk Crist faced is clearly erroneous. Crist argues that the notice Mrs. Rinehart gave Laudenslager during their conversation on the morning of April 9 clearly and unequivocally warned Laudenslager that Crist faced a specific risk of harm. The district court's finding that Laudenslager was not put on notice of any danger other inmates posed to Crist is a credibility and factual finding, not to be set aside unless clearly erroneous. Fed.R.Civ.P.52(a)(1993). A finding is clearly erroneous when, although there is evidence to support it, on the entire evidence the reviewing court is left with the definite and firm conviction that a mistake has been committed. Construction Techniques, Inc. v. Dominske, 928 F.2d 632, 638-39 (4th Cir.1991).
 
 
 13
 At the evidentiary hearing, Mrs. Rinehart and Crist gave conflicting testimony regarding what was said during their April 9 conversation. Mrs. Rinehart stated that she told Laudenslager that Crist needed a single-cell transfer because two guys "are hassling him and teasing him" and there is going "to be a fight and he is afraid he is going to be hurt." Laudenslager stated that Mrs. Rinehart merely requested a transfer for Crist to a single cell because he was currently uncomfortably housed. Laudenslager further testified that he asked both Mrs.Rinehart and Crist if there was a problem, and they both responded no. It was the magistrate's responsibility to reconcile this testimonial conflict. On de novo review, the district court made several independent findings and also adopted the magistrate's findings regarding what transpired between Crist, Mrs. Rinehart and Laudenslager on April 9th. Because these determinations were factual and based upon assessments of witness credibility, they are deserving of appellate deference under F.R.C.P. 52(a). U.S. Fire Ins. Co. v. Allied Towing Corp., 966 F.2d 820, 824 (4th Cir.1992).
 
 
 14
 On oral argument before this court, Crist argued that we should not defer to the district court's determination that Laudenslager had no knowledge of the danger inmates Thomas and Washington posed to Crist because the court did not make a specific credibility finding. We find that the district court did, in fact, make findings regarding witness credibility and also made specific factual findings regarding what was communicated during the April 9th conversation. The court found: (1) that Crist "probably did not on this occasion state an explicit reason" when requesting the transfer, "since he did not give a reason for his prior cell block transfer, did not tell his relatives he was scared or threatened, never reported the prior incident with inmate Thomas and did not even report the assault at issue;" and (2) that Mrs. Rinehart's communication to Laudenslager of Crist's request "lacked urgency that would evidence a specific risk of harm." The district court also adopted the magistrate's finding that after observing Laudenslager testify, it was persuaded that his affidavit "reflected his perception of what Mrs. Rinehart said." It is implicit from these findings that the district court placed more credibility in Laudenslager's version of what transpired during the conversation. Secondly, we cannot say that the finding was clearly erroneous, and we decide that it was not.
 
 IV.
 
 15
 We agree with the legal standard applied by the district court in this section 1983 prisoner assault case and will not disturb the court's factual and credibility findings as to Laudenslager's knowledge.
 
 
 16
 The judgment of the district court denying Crist's section 1983 claim is accordingly
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 A request which would not have prevented the beating which occurred in G Block's common area. As contrasted to a request for a cell block transfer, a single cell transfer request would not put prison officials on notice of any danger from other inmates in the block since the inmates share a common area
 
 
 [2]
 Washington was ordered to pay Crist $5,000 in restitution and received a 12-month sentence, with 11 months suspended. Charges against inmate Thomas were dropped
 
 
 [3]
 In the 1992 Hudson case, the Supreme Court surveyed its prior Eighth Amendment cases and reiterated the legal standard necessary to establish "wanton and unnecessary infliction of pain" in various prisoner claims (failure to attend to medical needs, excessive force, conditions of confinement) and the reasons for each standard. 60 U.S.L.W. at 4152-53
 
 
 [4]
 In his report and recommendation, the magistrate acknowledged that "actual knowledge" is not the appropriate standard and stated that "Crist must demonstrate [ ] that the defendants knew of a risk of harm specific to Crist or were so unreasonably blind to such risk that they can be charged with a culpable state of mind. "